## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| S.P.S., *ex rel.* NATALIE SHORT; EDWIN PRIOR; AILEEN NAKAMURA; ANGIE JONES; DNC SERVICES CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE; DSCC; DCCC; DEMOCRATIC PARTY OF GEORGIA, INC.; and PRIORITIES USA, <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and the Chair of the Georgia Board of Elections; REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia Board of Elections; DAVID WORLEY, in his official capacity as a member of the Georgia Board of Elections; SETH HARP, in his official capacity as a member of the Georgia Board of Elections; and ANH LE, in her official capacity as a member of the Georgia Board of Elections, <br><br> Defendants. | Civil Action No. <br><br> 1:19-cv-04960-AT |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, S.P.S., *ex rel.* NATALIE SHORT, EDWIN PRIOR, AILEEN

NAKAMURA, and ANGIE JONES (the "Voter Plaintiffs"), and DNC SERVICES

CORP., d/b/a DEMOCRATIC NATIONAL COMMITTEE (the "DNC"), DSCC, DCCC, the DEMOCRATIC PARTY OF GEORGIA, INC. ("DPG"), and PRIORITIES USA ("Priorities") (together with the DNC, DSCC, DCCC, and the DPG, the "Organizational Plaintiffs"), file this Complaint for Declaratory and Injunctive Relief against Defendants BRAD RAFFENSPERGER, in his official capacity as the Georgia Secretary of State and the Chair of the Georgia Board of Elections (the "Secretary"); REBECCA SULLIVAN, in her official capacity as the Vice Chair of the Georgia Board of Elections; and DAVID WORLEY, SETH HARP, and ANH LE, each in their official capacity as a member of the Georgia Board of Elections, and allege as follows:

## NATURE OF THE CASE

1.      This case concerns the constitutionality of a Georgia law that puts an arbitrary thumb on the scale in all of the State's partisan general elections in favor of candidates of a single political party—that of the last-elected Governor. *See* Ga. Code Ann. § 21-2-285(c) (the "Ballot Order Statute") (mandating that candidates be listed on the ballot in "descending order" of the number of votes cast for the "candidates of the political parties for Governor at the last gubernatorial election").

2.      The Ballot Order Statute thus requires that, in every partisan contest for political office in Georgia on its general election ballots through at least 2022, the Republican candidate will be listed first for no other reason than the last-elected Governor, Brian Kemp, is affiliated with the Republican Party. Democratic

candidates will have no opportunity to be listed first—for no other reason than their political party affiliation, and the fact that it is not shared by Governor Kemp.

3.      This is no mere election administration detail. It is a fact almost universally acknowledged that the candidates listed first in a race on the ballot receive an electoral benefit solely due to their ballot position. Academics have come to this conclusion again and again, as have federal and state courts. It is the inevitable result of a phenomenon known as the "primacy effect." And it gives first-listed candidates a meaningful and arbitrary advantage over all of their opponents.[1]

4.      Thus, the Ballot Order Statute gives Republican candidates a meaningful electoral advantage over their similarly situated Democratic opponents. That advantage all follows arbitrarily from the electoral success of a single candidate in an earlier, unrelated election. And it persists on every ballot, in every partisan race, in every general election thereafter, even if the last gubernatorial election was incredibly close—such as in 2018, where Governor Kemp and his Democratic opponent were separated by a mere 1.39 percentage points.[2]

5.      This litigation is brought by a group of Plaintiffs, who have supported and intend to continue to support Democratic candidates in Georgia, and all of whom

---

[1] Other terms for this phenomenon include "position bias," and, in the context of elections, the "ballot order effect" and "candidate name order effect."

[2] Most election results discussed in this Complaint are available on the Secretary of State's website. *See* Ga. Dep't of State, Current & Past Election Results, http://sos.ga.gov/index.php/Elections/current_and_past_elections_results     (last visited Nov. 1, 2019).

have suffered and, absent an order from this Court, are guaranteed to continue to suffer injury as a result of the Ballot Order Statute. They include the DNC, the official national party committee for the Democratic Party, which supports the election of Democrats up and down the ticket; the DSCC, a political committee the central mission of which is to support Democratic candidates for U.S. Senate, including for Georgia's two U.S. Senate seats, both of which will be up for election in 2020; the DCCC, a political committee the central mission of which is to support Democratic candidates for the U.S. House of Representatives, including for Georgia's 14 congressional districts, all of which will also be on the ballot in 2020; the DPG, a state political committee the central mission of which is to support Democratic candidates in Georgia; Priorities, which works to elect progressive candidates, including specifically in Georgia; and individual Georgia voters who plan to support Democrats for public office in Georgia in 2020.

6.     At its most basic, the Ballot Order Statute injures Plaintiffs, their constituencies, and the candidates they support, by treating them differently from the similarly-situated Republican Party and its candidates and voters, solely because a Republican won the last gubernatorial election. The Statute also dilutes the vote of Georgians, such as the Voter Plaintiffs, and the voting members and voting constituents of the Organizational Plaintiffs, simply as a result of their support of Democratic candidates in Georgia elections. The resulting disparate treatment and

burden on Plaintiffs' right to vote are not justified by any legitimate, much less compelling, state interest.

7.      In the only case in which the Supreme Court has considered a challenge to a state practice that would have given certain types of candidates (there, incumbents) the advantage of being placed first on the ballot, the Court summarily affirmed the lower court's preliminary injunction, which required that the State use a ballot order system that gave candidates an equal opportunity to be listed first. *See Mann v. Powell*, 333 F. Supp. 1261 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

8.      Multiple courts that have considered analogous challenges have similarly found that they cannot survive constitutional scrutiny. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977); *Graves v. McElderry*, 946 F. Supp. 1569, 1580 (W.D. Okla. 1996); *Netsch v. Lewis*, 344 F. Supp. 1280, 1280 (N.D. Ill. 1972); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (Cal. 1975); *Holtzman v. Power*, 62 Misc. 2d 1020, 1025 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (N.Y. 1970).

9.      This Court should reach the same conclusion and hold Georgia's Ballot Order Statute unconstitutional.

## JURISDICTION AND VENUE

10.      Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

12.     This Court has personal jurisdiction over the Defendants, who are sued in their official capacities only.

13.     Venue is proper in the Atlanta Division of the U.S. District Court in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, most of the Defendants reside in this judicial district, and a substantial part of the events that gave rise to Plaintiffs' claim occurred there.

14.     This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

15.     Plaintiff, S.P.S., *ex rel*. Natalie Short, is a resident of the State of Georgia. He has been a resident of Dunwoody for the past 16 years. S.P.S. will turn 18 years old in 2020 and has filled out the required paperwork to register to vote. S.P.S. considers himself to be a member of the Democratic Party. He regularly supports Democratic candidates in Georgia elections and intends to vote for Democratic Party candidates in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute prior to then, Republican Party candidates will be listed in the first position on the ballot in all partisan races in which he will be voting, and they will continue to receive an artificial and unfair

advantage purely as a result of their ballot position. As a result, S.P.S. will suffer serious, irreparable injury because of the Ballot Order Statute, both due to the dilution of his vote and the burden on his efforts to help elect Democratic Party candidates. His vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot. S.P.S. has also been actively engaged in efforts to help elect Democratic Party candidates in Georgia—efforts which the Ballot Order Statute makes significantly more difficult. He plans to continue these activities in regard to the upcoming 2020 election. The Ballot Order Statute, if it is not enjoined, will burden S.P.S.'s ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve his mission.

16.    Plaintiff Edwin Prior is a resident of and registered voter in the State of Georgia. He has been a resident of Apalachee, Georgia, an unincorporated community in Morgan County, for his entire life and has been a registered voter there since he was 23 years old. He considers himself to be an independent voter who leans Democratic. He regularly votes in Georgia elections and has voted for both Democratic and Republican Party candidates. He intends to vote for the Democratic Party candidate for president in the upcoming November 2020 general

election, as well for a Democratic candidate for U.S. Senate. If the Court does not enjoin the Ballot Order Statute prior to then, Republican Party candidates will be listed in the first position on the ballot in all partisan races in which Prior will be voting, and they will continue to receive an artificial and unfair advantage purely as a result of their ballot position. As a result, Prior will suffer serious, irreparable injury because of the Ballot Order Statute, due to the dilution of his vote for Democratic candidates for president and U.S. Senate. His vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot.

17.     Plaintiff Aileen Nakamura is a resident of and registered voter in Sandy Springs, Georgia. She has been a registered voter in Georgia since 2007. She considers herself to be a Democrat. She regularly votes in Georgia elections and has voted regularly for Democratic candidates. She intends to vote for the Democratic Party candidates in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute prior to then, Republican Party candidates will be listed in the first position on the ballot in all partisan races in which Nakamura will be voting, and they will continue to receive an artificial and unfair advantage purely as a result of their ballot position. As a result, Nakamura will suffer serious, irreparable injury because of the Ballot Order Statute, due to the dilution of her vote

for Democratic candidates. Her vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot. Nakamura has also been actively engaged in efforts to help elect Democratic Party candidates in Georgia— efforts which the Ballot Order Statute makes significantly more difficult. She plans to continue these activities in regard to the upcoming 2020 election. The Ballot Order Statute, if it is not enjoined, will burden Nakamura's ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve her mission.

18.    Plaintiff Angie Jones is a resident of and registered voter in Johns Creek, Georgia. She currently considers herself to be a Democratic voter. She consistently votes in Georgia elections and has regularly voted for Democratic candidates since 2011. She intends to vote for the Democratic Party candidates in the upcoming November 2020 general election. If the Court does not enjoin the Ballot Order Statute prior to then, Republican Party candidates will be listed in the first position on the ballot in all partisan races in which Jones will be voting, and they will continue to receive an artificial and unfair advantage purely as a result of their ballot position. As a result, Jones will suffer serious, irreparable injury because of the Ballot Order Statute, due to the dilution of her vote for Democratic candidates.

Her vote for Democratic Party candidates will be diluted relative to that of voters who cast their ballots for Republican Party candidates, because its weight and impact will be decreased—and the weight and impact of votes cast for Republican candidates increased—by the votes accruing to Republican candidates solely due to their first position on the ballot. Jones has also been actively engaged in efforts to help elect Democratic Party candidates in Georgia—efforts which the Ballot Order Statute makes significantly more difficult. She plans to continue these activities in regard to the upcoming 2020 election. The Ballot Order Statute, if it is not enjoined, will burden Jones' ability to engage in effective efforts to elect Democratic Party candidates by requiring substantially more time and resources to achieve her mission.

19.     Plaintiff the DNC is the national committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect local, state, and national candidates of the Democratic Party to public office throughout the United States, including in Georgia. The DNC works to accomplish that mission by, among other things, working closely with Democratic candidates and assisting state parties by making expenditures on candidates' behalves, providing Get Out the Vote ("GOTV") assistance, and actively supporting the development of programs benefiting Democratic Party candidates. The DNC has previously engaged in, and plans to continue to engage in, expenditures on behalf of Democratic Party candidates, GOTV assistance, and the development of programs to elect Democratic

Party candidates in Georgia. The DNC has members and constituents across the United States, including in Georgia, where the DNC's members and constituents include Democratic Party candidates, elected officials, and voters. The Ballot Order Statute directly harms the DNC by frustrating its mission and efforts to elect Democratic Party candidates in Georgia by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. The DNC has had to and will have to expend and divert funds that otherwise would have supported GOTV and other mission-critical efforts in order to combat the effects of the Ballot Order Statute to assist in getting Democratic candidates elected in Georgia, including specifically in anticipation of the 2020 general election. The Ballot Order Statute further harms the DNC because it treats the candidates the DNC supports in Georgia differently than similarly situated Republican Party candidates in partisan elections by mandating that all Republican candidates be listed first on the ballot for no other reason than a Republican won the last gubernatorial election. The DNC's voter members and its constituency of Democratic voters also have suffered and will continue to suffer serious, irreparable injury as a result of the Ballot Order Statute, because it has been and will continue to dilute their votes for Democratic Party candidates.

20.     Plaintiff DSCC is the national senatorial committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party to the U.S. Senate, including in Georgia. The DSCC works to

accomplish its mission by, among other things, making expenditures for and contributions to Democratic candidates for U.S. Senate and assisting state parties throughout the country, including in Georgia. In the past, the DSCC has made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic Senate candidates. In 2020, Georgia voters will be electing two U.S. Senators, and the DSCC will work to support the Democratic candidates in those races. As a result, the DSCC intends to make substantial contributions and expenditures to support Democratic candidates for U.S. Senate in Georgia in 2020. The Ballot Order Statute directly harms the DSCC by frustrating its mission by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates in Georgia, including in the upcoming elections for U.S. Senate. Most immediately, the DSCC will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Georgia, at the expense of its efforts in other states, to combat the effects of the Ballot Order Statute in the 2020 general election.

21.     Plaintiff DCCC is the national congressional committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). The DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from across the United States, including from Georgia's 14 congressional districts. The DCCC works to accomplish its mission by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Congress and assisting state

parties throughout the country, including in Georgia. For 2020, the DCCC has identified a number of congressional districts in Georgia as targeted races, in which it will expend significant resources to support Democratic candidates. Overall, in 2020, the DCCC expects to make contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country. The Ballot Order Statute directly harms the DCCC by frustrating its mission and efforts to elect Democratic Party candidates in Georgia by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. Most immediately, the DCCC will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Georgia, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in the 2020 general election.

22.     Plaintiff DEMOCRATIC PARTY OF GEORGIA, INC. is a state committee, as defined by 52 U.S.C. § 30101(15), and the official Democratic Party in the State of Georgia. The DPG represents a diverse group of stakeholders, including elected officials, candidates for elected office, state committee members, advisory caucuses, affiliate groups, grassroots activities, and active voters. Its mission is to elect Democratic candidates across Georgia. The DPG works to accomplish its mission by, among other things, making expenditures and working to increase turnout to elect Democratic candidates at both the State and federal level, including through GOTV and voter persuasion efforts. It also works to accomplish

its mission by assisting Georgians to ensure that all eligible voters have access to the franchise. The DPG has previously engaged in, and plans to continue to engage in, expenditures on behalf of Democratic Party candidates and GOTV assistance. The Ballot Order Statute directly harms the DPG by frustrating its mission and efforts to elect Democratic Party candidates in Georgia by giving an unfair, arbitrary, and artificial electoral advantage to Republican Party candidates. The DPG has had to and will have to expend and divert funds that otherwise would have supported GOTV and other mission-critical efforts in order to combat the effects of the Ballot Order Statute to assist in getting Democratic candidates elected in Georgia, including specifically in anticipation of the 2020 general election. The Ballot Order Statute further harms the DPG because it treats the candidates the DPG supports in Georgia differently than similarly situated Republican Party candidates in partisan elections by mandating that all Republican candidates be listed first on the ballot for no other reason than a Republican won the last gubernatorial election. The DPG's voter members and its constituency of Democratic voters also have suffered and will continue to suffer serious, irreparable injury as a result of the Ballot Order Statute, because it has been and will continue to dilute their votes for Democratic Party candidates.

23.    Plaintiff PRIORITIES USA is a 501(c)(4) nonprofit, voter-centric progressive advocacy and service organization. Priorities' mission is to build a permanent infrastructure to engage Americans in the progressive movement by

running a permanent digital campaign to persuade and mobilize citizens around issues and elections that affect their lives. To further this purpose, Priorities works to help elect Democratic Party candidates across the country, including in Georgia. In 2020, Priorities expects to make contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic candidates in state and federal elections around the country, including in Georgia elections. The Ballot Order Statute directly harms Priorities by frustrating its mission of, and efforts in, electing Democratic Party candidates in Georgia by giving an unfair and artificial electoral advantage to Republican Party candidates. Priorities will have to expend and divert additional funds and resources in GOTV, voter persuasion efforts, and other activities in Georgia, at the expense of its efforts in other states, to combat the effects of the Ballot Order Statute in getting Democratic candidates elected in Georgia, including in connection with the 2020 general election.

24.     Defendant BRAD RAFFENSPERGER is the Secretary of State of Georgia, the State's chief elections official, O.C.G.A. § 21-2-210, and the Chair of the Georgia State Elections Board (the "SEB"), and is named as a Defendant in his official capacity in each of those roles. In his official capacities, he is responsible for the administration and implementation of election laws in Georgia, including the Statute. *See id.*; *see also* Ga. Op. Att'y Gen. No. 2005-3 (Apr. 15, 2005) ("[I]it is clear that under both the Constitution and the laws of the State the Secretary is the state official with the power, duty, and authority to manage the state's electoral

system. . . .”). As it specifically relates to the Ballot Order Statute, the Secretary is responsible for prescribing “[t]he form and arrangement of ballots in Georgia,” §O.C.G.A. § 21-2-369(c), including “develop[ing], program[ing], build[ing], and review[ing] ballots for use by counties and municipalities on voting systems in use in” the State. §O.C.G.A. § 21-2-50(a)(15). The Secretary, personally and through the conduct of his employees, officers, agents, and servants, acted under color of state law at all times relevant to this action. As SEB Chair, Secretary RAFFENSPERGER is responsible for “promulgat[ing] rules and regulations so as to obtain uniformity in the practices and proceedings of superintendents, registrars, deputy registrars, poll officers, and other officials, as well as the legality and purity in all primaries and elections.” O.C.G.A. § 21-2-31(1). The SEB is responsible for “formulat[ing], adopt[ing], and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections; and, upon the adoption of each rule and regulation, the board shall promptly file certified copies thereof with the Secretary of State and each superintendent.” §O.C.G.A. § 21-2-31(2).

25.    Defendant REBECCA SULLIVAN is the Vice Chair of the SEB and is named as a Defendant in her official capacity. As a member of the SEB, she is responsible for “promulgat[ing] rules and regulations so as to obtain uniformity in the practices and proceedings of superintendents, registrars, deputy registrars, poll officers, and other officials, as well as the legality and purity in all primaries and

elections." O.C.G.A. § 21-2-31(1). The SEB is specifically responsible for "formulat[ing], adopt[ing], and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections; and, upon the adoption of each rule and regulation, the board shall promptly file certified copies thereof with the Secretary of State and each superintendent." *Id.* at (2). The Vice Chair, personally and through the conduct of her employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

26.     Defendants DAVID WORLEY, SETH HARP, and ANH LE are each members of the SEB and are named as Defendants in their official capacities ("SEB Member Defendants"). As SEB members, they are responsible for "promulgat[ing] rules and regulations so as to obtain uniformity in the practices and proceedings of superintendents, registrars, deputy registrars, poll officers, and other officials, as well as the legality and purity in all primaries and elections." O.C.G.A. § 21-2-31(1). The SEB is responsible for "formulat[ing], adopt[ing], and promulgat[ing] such rules and regulations, consistent with law, as will be conducive to the fair, legal, and orderly conduct of primaries and elections; and, upon the adoption of each rule and regulation, the board shall promptly file certified copies thereof with the Secretary of State and each superintendent." *Id.* at (2). The SEB Member Defendants, personally and through the conduct of their employees, officers, agents, and servants, acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

27.     It is well-established that the candidate whose name is listed first on the ballot receives the advantage of additional votes solely due to her ballot position. *See, e.g.*, *Holtzman*, 62 Misc. 2d at 1023 (recognizing "there is a distinct advantage to the candidate whose name appears first on a ballot" and this phenomenon is "so widespread and so universally accepted as to make it almost a matter of public knowledge"); *McLain*, 637 F.2d at 1166 (affirming "finding of ballot advantage in the first position"); *Sangmeister*, 565 F.2d at 465 ("[T]he trial court's conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence[.]"); *Graves*, 946 F. Supp. at 1576 (finding "some measure of position bias exists in Oklahoma's" elections); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming finding that "the primacy effect confers an advantage in elections"); *Gould*, 14 Cal. 3d at 664 (describing finding of position bias as "consistent with parallel findings rendered in similar litigation throughout the country"); *State ex rel. Roof v. Bd. of Comm'rs*, 39 Ohio St. 2d 130, 136 (Ohio 1974) (recognizing "it is generally agreed" that "candidates whose names appear at the beginning of the list receive some votes attributable solely to the positioning of their names"); *Kautenburger v. Jackson*, 85 Ariz. 128, 130-131 (Ariz. 1958) ("[I]t is a commonly known and accepted fact that where there are a number of candidates for

the same office, the names appearing at the head of the list have a distinct advantage.").

28.     Georgia's Ballot Order Statute mandates that, for every single partisan election listed on a general election ballot in the State, the candidates who share their political party with the last-elected Governor must be listed first on the ballot. O.C.G.A. § 21-2-285(c).

29.     The Ballot Order Statute provides in relevant part that candidates must be listed on the ballot "in the descending order of the totals of votes cast for candidates of the political parties for Governor at the last gubernatorial election." *Id.*

30.     Thus, the Ballot Order Statute, on its face, treats similarly situated political parties differently, to the consistent detriment of the party and candidates who do not share a political party affiliation with the last-elected Governor, as well as the voters who support those disfavored candidates.

31.     Candidates who share their political party affiliation with the last-elected Governor enjoy a systemic, arbitrary, and artificial advantage over their otherwise similarly situated rivals, directly and solely as a result of the Ballot Order Statute, which boosts their electoral prospects for no other reason than a single member of their party out-performed other candidates in a different election, which, in many cases, occurred years before the elections in which they continue to enjoy this state-mandated advantage.

32.     Even if the advantage conferred by the Ballot Order Statute in the average race was not ordinarily more than a point or two, in electoral politics, the resources needed to overcome such a difference are often substantial.

33.     In the most recent mid-term election cycle in 2018, many races were decided by slim margins—including the gubernatorial election, in which Georgia's current Republican Governor defeated Democratic candidate Stacey Abrams by a mere 1.39 percentage points.

34.     The gubernatorial election was not the only election in 2018 in which the winner was decided by only a few points—or even a fraction of a point. The Republican candidate for U.S. House of Representatives in Georgia's 7th Congressional District ("CD-7") defeated his Democratic opponent by only 0.14 percentage points. The Republican candidate for Attorney General won over his Democratic rival with only 2.6 percentage points. And the Republican candidates for State Representative in House Districts 43 ("HD-43"), 109, and 138 defeated their Democratic opponents by a mere 3.12, 3.08, and 3.58 percentage points, respectively.

35.     The fact that there were so many elections, up and down the ballot, in which Republican and Democratic candidates were separated by small, and in some cases, barely indistinguishable, vote shares was no historical aberration. Georgia has experienced exceedingly close elections in every recent major election cycle.

36.     For example, in the 2016 general election, Republican candidates in races for HD-105 and HD-111 defeated their Democratic counterparts by only 0.9 and 3.38 percentage points, respectively. That same year, the Republican candidate running to represent Senate District 6 ("SD-6") defeated the Democratic candidate by a mere 3.84 percentage points.

37.     There are likely to be even more highly competitive races in Georgia in 2020. As of the date of this filing, the Cook Political Report rated Georgia's CD-6 and CD-7 as political "toss ups," and both of Georgia's Senate seats, one of which is an open seat, as "likely" Republican but still competitive. It also rated Georgia as "lean[ing]," but not solidly, Republican in projections for the 2020 presidential election.

38.     At the more local level, Democrats picked up 11 seats in the Georgia State House and two in the State Senate in the 2018 election and are expected to gain more in the State House in 2020. *See* Doug Richards, *Could the GOP Lose its Georgia House Majority in 2020?*, 11 ALIVE (Aug. 12, 2019), https://www.11alive.com/article/news/could-the-gop-lose-its-georgia-house-majority-in-2020/85-d58aff3b-f4de-464c-886a-4428f09a3725.

39.     The Ballot Order Statute undermines the integrity of the State's elections, particularly in races that are decided within a matter of points, or fractions of a point.

40.     Unless the Ballot Order Statute is enjoined, in every single one of the partisan races on the ballot in Georgia in 2020, including those that are projected to be competitive, the Republican candidate will enter the election with a state-mandated thumb on the scale in favor of his or her election, for no other reason than a different Republican candidate won the Governor's race by 1.39 percentage points in an unrelated election two years earlier.

41.     The result will be severe and irreparable harm to the Plaintiffs, as well as the candidates they support and, in the case of the Organizational Plaintiffs, their memberships and voting constituencies.

42.     Neither political favoritism of one political party (here, the political party of the last-elected Governor) and its voters, nor purported election administration concerns, can sustain the Ballot Order Statute against legal challenge. *See Obama for Am. v. Husted*, 697 F.3d 423, 434 (6th Cir. 2012) (finding state interest in "smooth election administration" insufficient to justify disparate burden on voters); *see also Graves*, 946 F. Supp. at 1569 (finding no legitimate state interest in always placing one major political party first on the ballot).

43.     Even if adopting a rotational ballot order system to ensure fairness in elections would impose some administrative burden, Georgia cannot justify the disparate treatment that the current Ballot Order Statute mandates nor does the administrative burden outweigh the burden that it imposes on the rights of political parties, candidates, and the voters who support them. *See, e.g.*, *Democratic Exec.*

*Comm. v. Lee*, 915 F.3d 1312, 1322 (11th Cir. 2019); *Obama for Am.*, 697 F.3d at 434; *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018); *see also Mann*, 333 F. Supp. at 1261; *Meier*, 637 F.2d at 1166; *Sangmeister*, 565 F.2d at 468; *Graves*, 946 F. Supp. at 1580; *Netsch*, 344 F. Supp. at 1280; *Gould*, 14 Cal. 3d at 664; *Holtzman*, 62 Misc. 2d at 1025.

## CLAIMS FOR RELIEF

## COUNT I

**First and Fourteenth Amendments**
**U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Undue Burden on the Right to Vote**

44.     Plaintiffs reallege and incorporate by reference all prior paragraphs, as though fully set forth herein.

45.     A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

46.     "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted); *see also Gould*, 14 Cal. 3d at 670 (applying "close scrutiny" standard of review, because ballot order system

"impose[d] a very 'real and appreciable impact' on the equality, fairness and integrity of the electoral system"); *Akins*, 154 N.H. at 67 (applying strict scrutiny to determining state constitutionality of ballot order system that prioritized candidate names alphabetically).

47.     Georgia's Ballot Order Statute, which provides an unfair, arbitrary, and artificial advantage to all candidates whose political party won the last gubernatorial election, burdens the right to vote of those voters—including the Voter Plaintiffs and the members and constituents of the Organizational Plaintiffs—who support candidates of the major political party whose candidates are not listed first on the ballot, because it dilutes their vote relative to the votes for the favored political party candidate that the Statute requires be listed first on the ballot. *See McLain*, 637 F.2d at 1163 (describing system of listing first candidates of party that received the most votes in last North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the *fourteenth amendment*"); *see also Gould*, 14 Cal. 3d at 670 (describing statute that prioritized ballot order by incumbency as "inevitably dilut[ing] the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class").

48.     The weight and impact of Plaintiffs' votes (as well as the votes of the Organizational Plaintiffs' membership and constituencies) is consistently and arbitrarily decreased—and the weight and impact of the votes for the statutorily

favored party's candidates, increased—by the votes accruing to the first-listed candidates solely due to their first position on the ballot as mandated by the Ballot Order Statute.

49.     The Ballot Order Statute is not justified by any legitimate state interest, let alone a compelling state interest, that is sufficiently weighty to justify the burden on the right to vote. *See McLain*, 637 F.2d at 1167 (holding state's asserted interest in "making the ballot as convenient and intelligible as possible for the great majority of voters" was not a legitimate state interest to justify listing first on the ballot candidates of the political party that received the most votes in the last congressional election and constituted "favoritism"); *Gould*, 14 Cal. 3d at 675 (rejecting argument that asserted state interests in promoting "efficient, unconfused voting" justified an incumbent-first ballot order system and holding that interest "in promoting speed in the voting booth" was not a "compelling" state interest); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election" in terms of ballot order).

50.     Thus, the burdens imposed by the Ballot Order Statute on the fundamental right to vote outweigh any alleged benefits of the law.

51.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between Defendants and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs

to serious, concrete, and irreparable injuries to their fundamental right to vote, including, most immediately, in the upcoming 2020 general election.

## COUNT II

**Fourteenth Amendment**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Disparate Treatment in Violation of the Right to Equal Protection**

52.     Plaintiffs reallege and incorporate by reference all prior paragraphs, as though fully set forth herein.

53.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

54.     This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

55.     Georgia's Ballot Order Statute treats one recognized political party— and its candidates, members, constituencies, and the voters and organizations who support it—differently from the other similarly situated party, giving one an unfair and arbitrary electoral advantage based solely on the performance of that party's candidate in the last gubernatorial election, in violation of the Equal Protection

Clause. *See McLain*, 637 F.2d at 1166 (holding statute requiring political party of candidate who received most votes in prior North Dakota congressional election to be listed first on ballots unconstitutional, in violation of Equal Protection Clause); *see also Mann*, 333 F. Supp. at 1267 (enjoining ballot order system of placing candidates at top of ballot based on prior electoral success—due to "seniority" or "incumbency"—and stating "[t]he Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally"), *aff'd*, 398 U.S. 955 (1970); *Netsch*, 344 F. Supp. at 1281 (holding statute prescribing ballot order by past electoral success violated Fourteenth Amendment because it denied "the right to equal protection"); *Holtzman*, 62 Misc. 2d at 1024 (holding system requiring placement of incumbent at top of ballot unconstitutional because it violated the Equal Protection Clause); *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted).

56.   Georgia's Ballot Order Statute is not even rationally related to a legitimate state interest—much less narrowly tailored to advance a compelling state interest—to justify favoring the political party of the current Governor (and the serious and irreparable injury that results to Plaintiffs because of that favoritism), by ensuring that all candidates running in future elections under the auspices of the same party are listed first on the ballot and thus receive an unfair electoral advantage

solely resulting from their position of primacy. *See, e.g.*, *McLain*, 637 F.2d at 1167; *Holtzman*, 62 Misc. 2d at 1024.

57.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between Defendants and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause, including, most immediately, in the upcoming 2020 general election.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

(a)     declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the First and Fourteenth Amendment to the United States Constitution;

(b)     preliminarily and permanently enjoining the Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

(c)     awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

(d)     granting such other and further relief as the Court deems just and proper, including requiring Defendants to use a ballot order system that gives similarly-situated major-party candidates an equal opportunity to be listed first on the ballot.

Respectfully submitted, this 15th day of November, 2019.

**<u>Adam M. Sparks</u>**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
One Atlantic Center
1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Elisabeth C. Frost*
Jacki L. Anderson*
Zachary J. Newkirk**
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
znewkirk@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for the Plaintiffs*
*\*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice Motion Pending*