# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

S.P.S., *ex rel.* SHORT, *et al.*,

      Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.,*

      Defendants.

CIVIL ACTION NO.

1:19-CV-04960-AT

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................2

  A. The Ballot Order Statute requires that candidates affiliated with the
     Governor's political party be listed first. .........................................2

  B. The primacy effect's impact on elections is well-accepted and has now been
     broadly affirmed by empirical research. ...........................................3

  C. The Ballot Order Statute gives Republican candidates a substantial advantage
     in Georgia's elections. ....................................................................6

  D. Multiple recent elections have been decided within the margin of advantage
     conferred by the Ballot Order Statute. ..............................................8

  E. Georgia voters will decide multiple competitive races in 2020. .....................9

III.  ARGUMENT .......................................................................................10

  A. Plaintiffs are highly likely to succeed on the merits. ....................................10

     1. Legal Standard ..........................................................................11

     2. The Ballot Order Statute unconstitutionally treats the similarly situated
       major parties differently, severely burdening Plaintiffs. ............................12

     3. The burdens imposed by the Ballot Order Statute on Plaintiffs'
       constitutional rights cannot be justified by a legitimate, much less
       compelling, state interest. ..............................................................17

  B. Plaintiffs will suffer irreparable injury absent an injunction. ........................20

  C. The balance of the equities and public interest favor an injunction. ..............22

IV.  CONCLUSION .................................................................................233

# TABLE OF AUTHORITIES

*Akins v. Sec'y of State*,
154 N.H. 67 (N.H. 2006) ..........................................................5, 17, 18

*Burdick v. Takushi*,
504 U.S. 428 (1992)................................................................11, 19

*Bush v. Gore*,
531 U.S. 98 (2000)........................................................................12

*Carillon Imps., Ltd. v. Frank Pesce Int'l Grp., Ltd.*,
112 F.3d 1125 (11th Cir. 1997) ......................................................10

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985)......................................................................12

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008)......................................................................12

*Cunningham v. Adams*,
808 F.2d 815 (11th Cir. 1987) ........................................................22

*Curling v. Kemp*,
334 F. Supp. 3d 1303 (N.D. Ga. 2018) (Totenberg, J.), *aff'd*,
*Curling v. Ga. Sec'y of State*, 761 F. App'x 927 (11th Cir. 2019)....................11

*Curling v. Raffensperger*,
397 F. Supp. 3d 1334 (N.D. Ga. 2019)......................................21, 23

*Democratic Exec. Comm. v. Lee*,
915 F.3d 1312 (11th Cir. 2019) ...........................................11, 20, 24

*Elliott v. Sec'y of State*,
295 Mich. 245 (Mich. 1940).............................................................5

*Fla. Democratic Party v. Detzner*,
No. 4:16CV607-MW/CAS, 2016 WL 6090943 (N.D. Fla. Oct. 16,
2016) ....................................................................20, 22, 24, 25

*Fla. State Conference of NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ..........................................................................12

*Ga. Coal. for the People's Agenda v. Kemp*,
    347 F. Supp. 3d 1251 (N.D. Ga. 2018).........................................................23, 24

*Gould v. Grubb*,
    14 Cal. 3d 661 (Cal. 1975)........................................................................passim

*Graves v. McElderry*,
    946 F. Supp. 1569 (W.D. Okla. 1996)........................................................passim

*Hand v. Scott*,
    888 F.3d 1206 (11th Cir. 2018) ........................................................................15

*Holtzman v. Power*,
    62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824
    (1970)........................................................................................................passim

*Jacobson v. Lee*,
    No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov.
    15, 2019) ..................................................................................................passim

*Kautenburger v. Jackson*,
    85 Ariz. 128 (Ariz. 1958)....................................................................................5

*League of Women Voters of Fla., Inc. v. Detzner*,
    314 F. Supp. 3d 1205 (N.D. Fla. 2018) ............................................................23

*League of Women Voters of Fla. v. Browning*,
    863 F. Supp. 2d 1155 (N.D. Fla. 2012) ............................................................24

*League of Women Voters of N.C. v. North Carolina*,
    769 F.3d 224 (4th Cir. 2014) ......................................................................22, 24

*Mann v. Powell*,
    314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970) ......................2, 15

*Mann v. Powell*,
    333 F. Supp. 1261 (N.D. Ill. 1969)....................................................................22

*Martin v. Kemp*,
   341 F. Supp. 3d 1326 (N.D. Ga. 2018)........................................................20, 22

*McLain v. Meier*,
   637 F.2d 1159 (8th Cir. 1980) ...................................................................passim

*Netsch v. Lewis*,
   344 F. Supp. 1280 (N.D. Ill. 1972) ...............................................................14, 22

*Norman v. Reed*,
   502 U.S. 279 (1992)...........................................................................................11

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ......................................................................20, 22

*Picou v. Gillum*,
   874 F.2d 1519 (11th Cir. 1989) ........................................................................15

*Reynolds v. Sims*,
   377 U.S. 533 (1964)...........................................................................................17

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
   411 U.S. 1 (1973)...............................................................................................16

*Sangmeister v. Woodard*,
   565 F.2d 460 (7th Cir. 1977) .....................................................................passim

*State ex rel. Roof v. Bd. of Comm'rs*,
   39 Ohio St. 2d 130 (1974) ..................................................................................5

*Taylor v. Louisiana*,
   419 U.S. 522 (1975)...........................................................................................24

*United States v. Georgia*,
   892 F. Supp. 2d 1367 (N.D. Ga. 2012).............................................................24

**STATUTES**

O.C.G.A.§ 21-2-285(c) ......................................................................................passim

# I.      INTRODUCTION

This past Friday, a federal district court in Florida issued a permanent injunction prohibiting that State from continuing to implement its ballot order statute, which "systematically awards a material advantage to candidates affiliated with the political party of . . . [the] last-elected governor solely on the basis of their party affiliation," finding such state-sponsored favoritism of one major political party over a similarly-situated rival unconstitutional. *Jacobson v. Lee*, No. 4:18-cv-262-MW/CAS, 2019 WL 6044035, at *17 (N.D. Fla. Nov. 15, 2019). The law at issue here, O.C.G.A.§ 21-2-285(c) (the "Ballot Order Statute"), is indistinguishable in every way. Just like the unconstitutional provision in Florida, it requires that all candidates who share their party affiliation with the last-elected Governor must be listed first in every partisan race in the State's general elections. This seemingly innocuous provision is anything but. Because of a phenomenon known as the "primacy effect," which results in a significant electoral advantage to the first-listed candidate, it puts a thumb on the scale in favor of the Governor's party in every partisan race in Georgia. Because Republican candidates have won gubernatorial races for the past 16 years, the Ballot Order Statute has given that advantage to Republican candidates up and down the ticket for over a decade-and-a-half. Expert analysis confirms this, concluding that, on average, the Statute has resulted in Republican candidates gaining over 4 percentage points in the vote share in Georgia's elections, simply due to their exclusive claim to the ballot's first position. This advantage will perpetuate through at least 2022 because of the 2018

gubernatorial election—no matter that the Republican won over his Democratic opponent by only 1.39 points.

Unless the Ballot Order Statute is enjoined, Democratic candidates will go into 2020 with a State-inflicted disadvantage: because of the current Governor's squeaker of a victory in 2018, every ballot presented to Georgia's millions of voters will list Republican candidates first. The result will be significant and irreparable injuries to the Democratic voters, committees, and entities who bring this lawsuit (collectively, "Plaintiffs"). Because each of the relevant factors strongly favor the Plaintiffs' request for relief, the Court should issue a preliminary injunction that (1) prohibits Defendants from enforcing the Ballot Order Statute, and (2) requires that Georgia use a non-discriminatory system giving similarly situated major-party candidates an equal opportunity to be listed first.

## II.      BACKGROUND

### A.      The Ballot Order Statute requires that candidates affiliated with the Governor's political party be listed first.

The Ballot Order Statute provides in relevant part that, on Georgia's general election ballot, candidates must be listed "in the descending order of the totals of votes cast for candidates of the political parties for Governor at the last gubernatorial election." O.C.G.A.§ 21-2-285(c). In other words, all candidates associated with the party of the last-elected Governor must be listed first in every general election that follows. No candidate associated with any other party has any opportunity to be listed first, unless and until a candidate from their party wins a Georgia Governor's

race. This is true no matter how similarly situated the top vote-getting parties may be, or how slim the margin separating the winner in the last gubernatorial race from the candidate with the next largest vote share.[1]

For the past 16 years, the Ballot Order Statute's effect has been to list Republicans first in every partisan race in Georgia because of the Republican Party's success in gubernatorial races. Presently, Republicans must be listed first because of the 2018 election, in which current Governor Brian Kemp ascended to the governorship after capturing 50.22% of the vote—a mere 1.39 percentage points more than his Democratic rival, who won a nearly identical 48.83% of the vote.[2]

## B.   The primacy effect's impact on elections is well-accepted and has now been broadly affirmed by empirical research.

It has long been understood and accepted that people manifest bias toward selecting the first in a set of visually-presented options. *See* Ex. B, at 34.[3] This phenomenon is referred to in the literature by many names, including the "primacy

---

[1] Plaintiffs do not challenge any other parts of Section 21-2-285(c), including the alphabetical ordering system for candidates of parties with no candidate for Governor in the last election and independent candidates. While the Ballot Order Statute describes arranging names first horizontally, Georgia has long listed candidates on the ballot vertically, and now applies the Statute as mandating that candidates of the Governor's party be listed first from top to bottom.

[2] All election results cited herein can be found on the Georgia Secretary of State's website. *See* Ga. Dep't of State, Current & Past Election Results, available at http://sos.ga.gov/index.php/Elections/current_and_past_elections_results (last visited Nov. 14, 2019).

[3] All Exhibits cited are to the Declaration of Elisabeth C. Frost in Support of Motion for Preliminary Injunction ("Frost Decl.").

effect" and "position bias." Elections, and specifically the act of choosing among names listed on a ballot, are not immune.

In fact, there is a long line of cases finding that the primacy effect has a real and meaningful impact on elections. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1166 (8th Cir. 1980) (affirming "finding of ballot advantage in the first position"); *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977) ("[T]he trial court's conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence."); *Graves v. McElderry*, 946 F. Supp. 1569, 1576 (W.D. Okla. 1996) (finding "some measure of position bias exists in Oklahoma's" elections); *Akins v. Sec'y of State*, 154 N.H. 67, 71 (N.H. 2006) (affirming finding that "the primacy effect confers an advantage in elections"); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (Cal. 1975) (describing finding of primacy effects as "consistent with parallel findings rendered in similar litigation throughout the country"); *State ex rel. Roof v. Bd. of Comm'rs*, 39 Ohio St. 2d 130, 136 (1974) (recognizing "it is generally agreed" that "candidates whose names appear at the beginning of the list receive some votes attributable solely to the positioning of their names"); *Kautenburger v. Jackson*, 85 Ariz. 128, 130–31 (Ariz. 1958) ("[I]t is a commonly known and accepted fact that where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage."); *Elliott v. Sec'y of State*, 295 Mich. 245, 249 (Mich. 1940) (same). One court observed that the belief that candidates who are listed first enjoy an advantage

simply because of their ballot position is "so widespread and so universally accepted as to make it almost a matter of public knowledge." *Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970).

Despite this strong precedent, it was not until recently that scholarly research reached a virtual consensus that the primacy effect has a substantial and meaningful influence on elections. That modern research was featured prominently in *Jacobson v. Lee*, which, on Friday, became the newest case to find a ballot order statute unconstitutional—this time, invalidating a statute that is substantively indistinguishable from Georgia's. *See Jacobson*, 2019 WL 6044035, at *23. The difference, the court noted, between it and the raft of cases listed above was that *Jacobson* represented "the first time" that a court had "a fully developed evidentiary record upon which to evaluate a ballot order claim." *Id*. at *11. The defendants raised a "hodgepodge" of arguments in opposition, but most, the court noted, were designed to convince the court to avoid reaching the merits. *Id*. at *2. When those arguments were disposed of, the court observed that, "the issues presented in this case are not novel"; in fact, "[i]n a jurisprudential sense, they are not even particularly challenging." *Id*. at *4. In the end, the court easily found that the Constitution could not sustain the ballot order statute at issue, through which the state "put its thumb on the scale and award[ed] an electoral advantage to the party in power." *Id*. at *1; *see also id.* at *23.

The scholarship described at length by the court in *Jacobson* (and also set forth in expert reports submitted with this memo) confirmed not only the conclusions of decades of judicial precedent, but also what those in politics long suspected. Ballot order broadly impacts elections, and is often used to give the party in power a small but meaningful edge that can make the difference, particularly in very close elections. *See Jacobson*, 2019 WL 6044035, at *12 (summarizing how 84% of 1,086 unique tests across 70 years of social science revealed primacy effects in elections); Ex. A, at 5–7 & 33–36 (identifying ballot order effects in Alabama, Florida, Georgia, Michigan, and North Carolina); *id*. at 44–45 (noting that North Carolina Republicans changed a law similar to the Ballot Order Statute after losing the governorship); Ex. B, at 16–19 (summarizing works identifying ballot order effects in California, Colorado, Illinois, Michigan, North Dakota, Ohio, and Vermont); *see also* Ex. D, ¶ 7 ; Ex. E, ¶ 5; Ex. F, ¶ 4; Ex. G, ¶ 5; Ex. H, ¶ 6; Ex. I, ¶ 5.

## C.   The Ballot Order Statute gives Republican candidates a substantial advantage in Georgia's elections.

As noted above, courts and scholars have repeatedly and decisively found that ballot order impacts elections in virtually every jurisdiction that has now been studied. *Jacobson*, 2019 WL 6044035, at *5. In fact, only one modern study— concerning elections in Afghanistan—found no statistically significant evidence of ballot order effect. *Id*. at *11, n.15. Unsurprisingly, Georgia is similar to the vast majority of the jurisdictions that have been analyzed in that ballot order impacts its elections, and meaningfully so. And, because of the Ballot Order Statute, the

advantage that the primacy effect confers on first-listed candidates has conveyed entirely to Republican candidates for the past 16 years.

Dr. Jonathan Rodden, a well-respected political scientist who was most recently qualified as an expert in *Jacobson*—and whose methods and analysis the court found "reasonable, reliable, and credible," *id*. at *5—confirms this. *See* Ex. A, at 5–8. Specifically, Dr. Rodden finds that, on average, Republicans have enjoyed a 4.2 percentage point advantage in Georgia as a result of being listed first on the ballot in all elections since 2004. *Id*. at 5. Although the advantage is smaller when the analysis is limited to mid-term election years, it is still substantial, conferring upon first-listed Republicans a 1.8 percentage point advantage. *Id*. at 24. Further, even in mid-term elections, the primacy effect balloons in races for open seats, with Republicans enjoying a 4.5 percentage point advantage as a result of their first-position. *Id*.

Although on their own the numbers above are striking, they actually underestimate the total effect. This is because, in any given election, the total overall percentage point gap that may be attributable to primacy effects includes not just the percentage points *gained* by the candidate whose name appears first on the ballot solely due to their first-listed position, but also the points *lost* by the candidates who do not appear first, also as a direct result of their ballot position. *Jacobson*, 2019 WL 6044035 at *12; *see also* Ex. B, at 12–13.

That's not all. Dr. Rodden found the ballot order effect has an even greater impact in down-ballot races. *See generally* Ex. A, at 28–44. He found a marked change in the performance of down-ballot candidates from the Democratic and Republican Parties in Georgia after the ballot order switched when a Republican beat the Democratic incumbent in the 2002 gubernatorial election. Regardless of which party was listed first, down-ballot candidates from the first-listed party consistently outperformed their co-partisans in Georgia's high-profile, top-of-ballot races. *Id.* at 5–6. This phenomenon cannot rationally be explained by anything other than a significant ballot order effect flowing directly from the operation of the Ballot Order Statute. *See id.* at 43–44; *see also Jacobson*, 2019 WL 6044035, at *14.

**D.   Multiple recent Georgia elections have been decided within the margin of advantage conferred by the Ballot Order Statute.**

In recent years, there have been several races decided in Georgia within the average advantage that the Ballot Order Statute confers upon a first-listed candidate because of ballot position. In 2016, Republican state representative candidates in Districts 105 and 111 defeated their Democratic opponents by 0.9 and 3.4 percentage points respectively, both well within the margin of advantage that the Statute has, on average, conferred on first-listed Republican candidates. The same is true of the victory of the Republican candidate for State Senate District 6, who, the same year, defeated his Democratic opponent by only 3.8 percentage points.

In the 2018 midterm election, too, multiple races were decided within the 1.8 average percentage point advantage that the Ballot Order Statute has given

Republicans in off-year elections. *See id*. at 24. That year, the Republican candidate for the 7th Congressional District defeated his Democratic opponent by a margin of only 0.14 points.

As mentioned, the 2018 Governor's race was also decided by a vanishingly slim margin that itself came within the margin of advantage enjoyed by Republicans because of the Ballot Order Statute. Governor Kemp prevailed over his Democratic opponent, Stacey Abrams, by only 1.39 points. That election will dictate the ballot order of every partisan race in Georgia through at least 2022, putting Republicans first, and giving them a significant advantage from the outset in all of those races.

**E.     Georgia voters will decide multiple competitive races in 2020.**

Multiple contests for seats that will be up for election on Georgia's general ballot in 2020 are expected to be competitive. At least two of Georgia's 14 congressional districts and both of Georgia's U.S. Senate elections are expected to be hotly contested. Ex. E, ¶ 10, Ex. F, ¶ 11. Even more, despite the advantage the Ballot Order Statute has historically granted to Republicans, Democratic candidates picked up a net 11 seats in the Georgia House in 2018. Ex. G, ¶ 12. As a result, Democratic candidates are realistically within reach of winning a majority of the State House. Ex. D, ¶ 15. All this in addition to a presidential contest in which Georgia is increasingly looking like a battleground state. *Id.* at ¶ 17.

Ever-closer elections are becoming increasingly common in Georgia. The State's elections were more competitive between 2010 and 2018 than in the previous

four decades. Ex. C, at 7. In 2018 alone, eight of the ten statewide races had a margin of victory of less than 5 percentage points. *Id*. at 8. Put another way, Georgia's most recent election cycle was more competitive than all the other elections held in the 2010s, 2000s, 1990s, 1980s, and 1970s.

### III.    ARGUMENT

The Court should issue the requested preliminary injunction because: (1) Plaintiffs are highly likely to succeed on the merits of their claims; (2) they are certain to suffer irreparable harm without one; (3) that harm outweighs any injury Defendants will suffer because of an injunction; and (4) an injunction is in the public interest. *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp., Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997); *see also Jacobson*, 2019 WL 6044035, at *23 (listing same criteria for permanent injunction, and finding all satisfied).

### A.    Plaintiffs are highly likely to succeed on the merits.

Plaintiffs are highly likely to prevail on their claims that the Ballot Order Statute violates the U.S. Constitution. As in *Jacobson*, Georgia's Ballot Order Statute both treats similarly situated political parties, along with their candidates and voters, differently and imposes an unjustifiable burden on Plaintiffs' voting rights. Simply put, the Constitution does not permit a state to employ "a ballot order scheme which systematically advantages candidates of one party and disadvantages candidates of another party to a statistically significant (and potentially outcome-

determinative) degree." *Jacobson*, 2019 WL 6044035, at *23. For all of the reasons that follow, the Court should issue the requested injunction.

### 1.    Legal Standard

When an election law is challenged under the First and Fourteenth Amendments, courts apply the *Anderson-Burdick* balancing test. *See Jacobson*, 2019 WL 6044035, at *22; *Graves*, 946 F. Supp. at 1578–79; *see also Democratic Exec. Comm. v. Lee*, 915 F.3d 1312, 1318–19 (11th Cir. 2019); *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1325 (N.D. Ga. 2018) (Totenberg, J.), *aff'd, Curling v. Ga. Sec'y of State*, 761 F. App'x 927 (11th Cir. 2019). That test requires the Court to "weigh 'the character and magnitude of the asserted injury to the rights . . . the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S.  780, 789 (1983)). The standard is "flexible," with the rigorousness of scrutiny dependent upon the extent to which the challenged law burdens voting rights. *Id.* Thus, when voting rights are subject to a "severe" restriction, a law "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). But even less severe burdens remain subject to balancing: "[h]owever slight" the burden on voting rights may appear, "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the

limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman*, 502 U.S. at 288–89).

### 2.   The Ballot Order Statute unconstitutionally burdens Plaintiffs' fundamental rights.

Plaintiffs are highly likely to succeed on their claim that the Ballot Order Statute violates the Fourteenth Amendment's equal protection clause which requires, quite simply, "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding equal protection clause applies to "the manner of [the] exercise [of voting]" and "the State may not, by . . . arbitrary and disparate treatment, value one person's vote over that of another"). Put another way, "[w]hen a state adopts an electoral system, the Equal Protection Clause . . . guarantees qualified voters a substantive right to participate *equally* with other qualified voters in the electoral process." *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1185 (11th Cir. 2008) (citations omitted).

On its face, the Ballot Order Statute treats similarly-situated parties differently, to the persistent and systemic disadvantage of Plaintiffs, based arbitrarily on a sometimes microscopic difference in vote share between the Republican and Democratic candidate in a single prior race. Courts that have considered challenges to ballot order schemes that selectively grant preferential treatment to one group over other similarly-situated parties have easily found them to violate the equal protection clause. This was the case, most recently, in Friday's decision in *Jacobson*, where the

Court invalided a statute that is identical to Georgia's in all meaningful ways. *Jacobson*, 2019 WL 6044035, at *23. It was true, as well, in *McLain v. Meier*, when the Eighth Circuit invalidated a statute that reserved the first position on the ballot for the party that received the most votes in the last congressional election. 637 F.2d at 1166. It was also the case in *Graves v. McElderry*, where a federal district court applied *Anderson-Burdick* to strike down an Oklahoma law that mandated that Democrats be listed first in each race on every general election ballot. 946 F. Supp. at 1578–79; *see also id*. at 1580 (finding "*no* legitimate State interest . . . can possibly be served by the selection of one particular party's candidates for priority position on every General Election ballot") (citing *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 69–70 (1990)).

None of these cases are outliers. They are consistent with every decision that has analyzed analogous challenges. *See, e.g.*, *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972) (holding prescribing ballot order by past electoral success violates equal protection); *Gould*, 14 Cal. 3d at 664 (explaining how "any procedure which allocates such advantageous positions to a particular class of candidates inevitably discriminates against voters supporting all others candidates"); *Holtzman*, 62 Misc. at 1024 (holding system requiring incumbent at top of ballot unconstitutional).

13

And all of these cases are consistent with *Mann v. Powell*, the only time the Supreme Court has considered the constitutionality of a ballot ordering system that gives one category of candidates a systemic advantage. 314 F. Supp. 677, 679 (N.D. Ill. 1969) ("*Mann I*"), *aff'd*, 398 U.S. 955 (1970). After the district court issued a preliminary injunction requiring that ballot order in the upcoming election be determined by "nondiscriminatory means by which each . . . candidate[] shall have an equal opportunity to be placed first on the ballot," *id*., the Court summarily affirmed. *Mann I*, 398 U.S. at 955. Lower federal courts "are bound by the Supreme Court's summary determinations." *Hand v. Scott*, 888 F.3d 1206, 1208 (11th Cir. 2018); *see also Picou v. Gillum*, 874 F.2d 1519, 1520 n.3 (11th Cir. 1989) ("The Supreme Court's summary dispositions are of course entitled to full precedential respect.") (citation omitted); *Jacobson*, 2019 WL 6044035, at *3. The reasoning of *Mann I* applies equally here: both laws grant top ballot placement, and thus electoral advantage, to one class of candidates, systemically burdening the candidates of another similarly-situated class.

The heavy weight of precedent recognizes not only the advantage the primacy effects bestows on some candidates, but also the severe burden on rights of voters whose preferred candidates are systemically disadvantaged by the Ballot Order Statute. For instance, in *Gould v. Grubb* the court relied on U.S. Supreme Court precedent to find that a statute that automatically placed the incumbent first on the ballot operated to "substantially," and unconstitutionally "dilute[] the weight of

votes of those supporting nonincumbent candidates." 14 Cal. 3d at 672. In *Graves*, the court similarly found that, "the existence of position bias arising from ballot configuration . . . infringes upon the careful and thoughtful voters' rights of free speech and association by negating the weight or impact of those citizens' votes for candidates for public office." 946 F. Supp. at 1579. And, in *McLain*, the Eighth Circuit found that a system that consistently listed first the candidates of the party that received the most votes in the last North Dakota congressional election "burden[ed] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment." 637 F.2d at 1167.

These authorities are consistent with long-standing Supreme Court authority recognizing that voters have the right, "implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 n.78 (1973). "[A]n individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of [other] citizens." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

The practical effect of the Ballot Order Statute is to directly infringe upon that right. Because more reliably Democratic voters must turn out and support their candidates to counteract the durable, state-mandated advantage that the Ballot Order Statute confers on Republicans, the power of voters supporting Republican candidates is enhanced, such that one Republican voter has effectively more voting

power than their Democratic counterpart, even if they are otherwise alike in every other meaningful way. *See* Ex. D, ¶ 20; Ex. E, ¶ 11; Ex. G, ¶¶ 13–14; Ex. H, ¶ 8; Ex. I, ¶ 6. A ballot order statute like Georgia's, "[b]y systematically awarding a statistically significant advantage to the candidates of the party in power, . . . takes a side in partisan elections." *Jacobson*, 2019 WL 6044035, at \*18.

Given the Ballot Order Statute's persistent favoritism of a single party, Plaintiffs need not demonstrate that the Statute has flipped elections, *see McLain*, 637 F.2d at 1159 (holding ballot order system unconstitutional where plaintiff candidate received only 1.5% of the vote), or even that it has a certain percentage point impact, in order to prevail. *See, e.g.*, *Jacobson*, 2019 WL 6044035, at \*18 ("[C]andidate name order effects are not the only reason elections are won and lost, but they do contribute substantially to candidates' successes or failures at the polls."); *Graves*, 946 F. Supp. at 1576–81 (finding ballot order system unconstitutional, based on "some measure of position bias exists in Oklahoma's General Elections"); *Akins*, 154 N.H. at 72 (striking down statute on finding "that the primacy effect influences, even to a small degree, the outcome of New Hampshire elections"); *Gould*, 14 Cal. 3d at 668 (finding "significant," but unquantified, advantage accrued to candidates even in high-visibility elections). So, too here, the Court can and should conclude that, even if the primacy effect is "slight" or indeterminate, the Ballot Order Statute impermissibly burdens Plaintiffs' constitutional rights.

16

Even so, it is extremely likely that the Statute has influenced election outcomes and, unless enjoined, is likely to do so in the future. *Jacobson*, 2019 WL 6044035, at *18 (observing how primacy effect is greater than margin of victory in many Florida elections); *Akins*, 154 N.H. at 73 (noting even if "the primacy effect's influence on the outcome of elections is small, . . . elections are often decided by narrow margins, and even a small degree of influence carries the potential to change the result of an election"); *Gould*, 14 Cal. 3d at 670 (same). As detailed above, many elections, especially in the last few years, have been decided within the primacy effect margin that the Ballot Order Statute confers, without exception, to the candidates of the Governor's party. *See* Ex. D, ¶¶ 12–13; Ex. G, ¶¶ 9–10.

For all these reasons, Plaintiffs are highly likely to be able to prove that the Ballot Order Statute severely injures their fundamental rights. Accordingly, under *Anderson-Burdick*, the Statute may only be maintained if Defendants can demonstrate that, at the very least, legitimate and relevant state interests justify that burden. They cannot do so.

### 3. The burdens imposed by the Ballot Order Statute on Plaintiffs cannot be overcome by any plausible state interest.

The burdens imposed on Plaintiffs' fundamental rights are substantial, requiring that the Court apply heightened scrutiny to their claims. *See Jacobson*, 2019 WL 6044035, at *10–11. But even if the Ballot Order Statute were subject to the least stringent level of scrutiny available to it under *Anderson-Burdick*, it still could not survive challenge. *See Graves*, 946 F. Supp. at 1569 (finding no legitimate

state interest in always placing one major political party first on the ballot); *Holtzman*, 62 Misc. 2d at 1024 (holding no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election"); *Sangmeister*, 565 F.2d at 467 (holding ballot order system did not further "any substantial state interest"); *see also Jacobson*, 2019 WL 6044035, at *22.

Whatever else the Secretary may attempt to argue justifies the Ballot Order Statute, it is clear that Georgia's only true interest in its favoritism of a single political party in election after election is that of maintaining the governing party's dominance. *See Jacobson*, 2019 WL 6044035, at *23 ("[I]t is difficult to imagine what other purpose [ballot order statute] could possibly serve than as a thumb on the scale in favor of the party in power."). But "[p]olitical patronage is not a legitimate state interest which may be served by a state's decision to classify or discriminate in the manner in which election ballots are configured as to the position of candidates on the ballot." *Graves*, 946 F. Supp. at 1580–81; *see also McLain*, 637 F.2d at 1167 (finding state's "favoritism" of the political party that received the most votes in the last congressional election failed rational basis review); *Jacobson*, 2019 WL 6044035, at *23; *Holtzman*, 62 Misc. 2d at 1024.

The Secretary is more likely to attempt to justify the law on administrative grounds, but there, too, courts have repeatedly found such interests to be insufficient to justify similar laws. *See Gould*, 14 Cal. 3d at 675 ("[N]umerous cases have refused to permit the state to justify discriminatory legislation on the basis of similar

'administrative efficiency' interests."); *Sangmeister*, 565 F.2d at 467; *Jacobson*, 2019 WL 6044035, at \*21; *see also Democratic Exec. Comm*, 915 F.3d at 1322; *Obama for Am. v. Husted* ("*OFA*"), 697 F.3d 423, 434 (6th Cir. 2012); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018); *Fla. Democratic Party v. Detzner*, No. 4:16CV607-MW/CAS, 2016 WL 6090943, at \*7 (N.D. Fla. Oct. 16, 2016).

In this particular case, moreover, claims of administrative burden would be particularly ill-founded, because Georgia's current and newly-enacted voting software system has the built-in capability to rotate names on the ballot. *See* Ex. L & Ex. M. Requiring rotation to negate the ballot order effect would accordingly impose little—if any—administrative burden. This would be the case in any event, but given that Georgia is currently in the process of transitioning to new voting machines and adopting new procedures that must be in place no later than January 3, 2020, as a result of an order issued by this Court in another case, *see Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1410–11 (N.D. Ga. 2019) (Totenberg, J.), it cannot possibly create an undue administrative burden to make this change, as well.

Similarly, any alleged state interest in avoiding voter confusion cannot justify the systemic advantage the Ballot Order Statute confers on the Governor's party. Put simply, that inherent and relentless advantage is not remotely necessary to achieve a comprehensible ballot. In fact, many states use ballot order systems that either randomize or disperse (through rotation) the impacts of the primacy effect in a

politically neutral way, *see Jacobson*, 2019 WL 6044035, at 18 n.21, and there is no evidence that the voters in those jurisdictions experience any additional confusion as a result. If anything, Georgia's present system is designed and operates to capitalize upon and enhance voter confusion to the sole advantage of a single political party; it does nothing to alleviate it. *See, e.g.*, *Holtzman*, 62 Misc. 2d at 1024; *see also Jacobson*, 2019 WL 6044035, at *21; Ex. I, ¶ 7, Ex. J, ¶ 9.

Furthermore, it would be nonsensical to justify the Ballot Order Statute on the ground that voter confusion might result from changing the order of the major parties on the ballot, because the Statute in fact requires such rotation when a candidate from a different party wins the Governor's race. *See* O.C.G.A. § 21-2-285(c). Courts considering similar schemes have rejected arguments that purported concerns about voter confusion justify their disparate and burdensome impacts. *See, e.g.*, *McLain*, 637 F.2d at 1167; *Gould*, 14 Cal. 3d at 675; *Sangmeister*, 565 F.2d at 467.

In sum, Plaintiffs are highly likely to succeed on their claims because the Ballot Order Statute imposes substantial burdens on their constitutional rights that cannot be justified by legitimate, much less compelling, state interests.

**B.    Plaintiffs will suffer irreparable injury absent an injunction.**

Unless the Ballot Order Statute is enjoined, Plaintiffs will suffer severe and irreparable harm in the 2020 election. Plaintiffs intend to commit significant resources to support the elections of Democrats up and down the ticket in Georgia in the 2020 election. Ex. D, ¶¶ 18–19; Ex. E, ¶ 10; Ex. F, ¶ 14; Ex. G, ¶¶ 11–12; Ex.

H, ¶ 8; Ex. J, ¶ 9. Unless the Ballot Order Statute is enjoined, it will severely hamper those efforts. *Id*. Once the election has come and gone, those serious injuries to the Plaintiffs cannot be "undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see also League of Women Voters of N.C. v. North Carolina* ("*LOWV*"), 769 F.3d 224, 247 (4th Cir. 2014); *OFA*, 697 F.3d at 436; *Martin*, 341 F. Supp. 3d at 1340; *Fla. Democratic Party*, 2016 WL 6090943, at *8; *Netsch*, 344 F. Supp. at 1280–81; *Mann v. Powell* (*Mann II*), 333 F. Supp. 1261, 1267 (N.D. Ill. 1969). Indeed, every day that the Ballot Order Statute is in force, and thus necessarily influencing political strategy, Plaintiffs are irreparably harmed. *See Jacobson*, 2019 WL 6044035, at *6 ("[Plaintiffs'] claims concern the fact that Florida's ballot order statute allocates the primacy effect vote to groups of candidates on the sole basis of partisan affiliation."); *Ga. Coal. for the People's Agenda v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018) (finding harm irreparable when "[p]laintiffs' organizational missions, including registration and mobilization efforts, will continue to be frustrated and organization resources will be diverted to assist" with the challenged law, as "[s]uch mobilization opportunities cannot be remedied once lost"); *see also* Ex. D, ¶¶ 18–20 ; Ex. E, ¶ 13; Ex. F, ¶ 14; Ex. G, ¶¶ 11–12.

Plaintiffs will also suffer irreparable harm through the systemic dilution of their voting power absent an injunction. *Ga. Coal. for People's Agenda*, 347 F. Supp. 3d at 1267–68; *League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d

1205, 1223–24 (N.D. Fla. 2018); Ex. D, ¶¶ 16–18; Ex. E, ¶¶ 11–12; Ex. F, ¶¶ 13–14; Ex. G, ¶ 14; Ex. H, ¶ 8; Ex. I, ¶ 7; Ex. J, ¶ 9; Ex. K, ¶ 6. This is in sharp contrast to the Ballot Order Statute's impact on the voting power of Republican voters, which it substantially enhances. Ex. D, ¶ 20; Ex. E, ¶ 11; Ex. F, ¶ 14; Ex. G, ¶ 14; Ex. H, ¶ 8; Ex. I, ¶ 7. Because these harms—which "go to the heart of a functioning democracy," *Curling*, 397 F. Supp. 3d, at 1411—also cannot be remedied post-election, they, too, are irreparable.

## C.   The balance of the equities and public interest favor an injunction.

This Court has previously held that, "[t]he potential hardships that Georgia might experience are minor when balanced against the right to vote, a right that is essential to an effective democracy." *United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012). The same is true here. In weighing the equities, Plaintiffs face severe burdens to their most fundamental of constitutional rights. They must compete in political contests and vote on a starkly uneven playing field under a system that threatens and delegitimizes the very premise of representational government. Ex. D, ¶ 16; Ex. E, ¶ 11; Ex. F, ¶ 12; Ex. G, ¶ 13 ; Ex. H, ¶ 8; Ex. I, ¶ 7; Ex. J, ¶ 9; Ex. K, ¶ 6. On the other side of the scale is the State, which, if an injunction is issued, will face little to no additional administrative burden in ordering names on a ballot using a more equitable system. In such a case, the scales tip sharply in favor of granting relief to protect Plaintiffs' constitutional rights. *See, e.g.*, *Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *Democratic Exec. Comm. of Fla.*, 915 F.3d

at 1332; *Ga. Coal. for People's Agenda*, 347 F. Supp. 3d at 1268; *Fla. Democratic Party*, 2016 WL 6090943, at *26.

Issuing the requested injunction would also be in the public interest, which "is served when constitutional rights are protected." *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1327 (citation omitted). This includes the right to vote. *See LOWV*, 769 F.3d at 248; *Ga. Coal. for People's Agenda*, 347 F. Supp. 3d at 1268; *Georgia*, 892 F. Supp. 2d at 1378; *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012); *Fla. Democratic Party*, 2016 WL 6090943, at *8. If the Statute is not enjoined, it will directly interfere with the fundamental right to vote of countless Georgia voters, including Plaintiffs S.P.S., Edwin Prior, Aileen Nakamura, and Angie Jones, and the DNC's voting members, as well as the elections of all the Democratic candidates among the membership of and supported by the Democratic Party and Plaintiffs who are running in partisan elections in Georgia in 2020. Ex. D, ¶ 18; Ex. E, ¶ 13; Ex. F, ¶ 12; Ex. G, ¶ 13; Ex. H, ¶¶ 7–8; Ex. I, ¶ 6; Ex. J, ¶ 8; Ex. K, ¶ 6. Thus, the public interest, too, strongly favors enjoining the Ballot Order Statute.

## IV.        CONCLUSION

For all of these reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction enjoining the enforcement of O.C.G.A. § 21-2-285(c) and requiring Defendants, in advance of the 2020 general election, to use a ballot order system that gives similarly-situated major-party candidates an equal opportunity to

be listed first on the ballot. *Mann I*, 314 F. Supp. at 679 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

Dated: November 18, 2019                 Respectfully submitted,

**<u>Adam M. Sparks</u>**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
One Atlantic Center
1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Elisabeth C. Frost*
Jacki L. Anderson*
Zachary J. Newkirk**
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
znewkirk@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for Plaintiffs*
*\*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice Pending*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| S.P.S., *ex rel.* SHORT, *et al.*, | CIVIL ACTION NO. |
| Plaintiffs, | 1:19-CV-04960-AT |
| v. | |
| BRAD RAFFENSPERGER, *et al.,* | |
| Defendants. | |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Plaintiffs' Complaint for Injunctive and

Declaratory Relief has been prepared in accordance with the font type and margin

requirements of L.R. 5.1, using font type of Times New Roman and a point size

of 14.

Dated: November 18, 2019                    **Adam M. Sparks**
                                            *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

S.P.S., *ex rel.* SHORT, *et al.*,

        Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.,*

        Defendants.

CIVIL ACTION NO.

1:19-CV-04960-AT

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: November 18, 2019

                                       **<u>Adam M. Sparks</u>**
                                       *Counsel for Plaintiffs*