# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| S.P.S., *ex rel.* SHORT, *et al.*, | CIVIL ACTION NO. |
| Plaintiffs, | 1:19-CV-04960-AT |
| v. | |
| BRAD RAFFENSPERGER, *et al.,* | |
| Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**INTRODUCTION**..............................................................................................1

**ARGUMENT** ....................................................................................................1

   I.   Both organizational and individual plaintiffs have standing............................1

   II.  This case is justiciable. ...................................................................................4

   III.   Plaintiffs are likely to succeed on the merits. ...............................................6

   IV.   Plaintiffs will suffer irreparable harm without an injunction.......................12

   V.  The balance of the equities and the public interest favor Plaintiffs. ..............14

**CONCLUSION**................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*281 Care Comm. v. Arneson*,
   638 F.3d 621 (8th Cir. 2011) ............................................................3

*Akins v. Sec'y of State*,
   904 A.2d 702 (N.H. 2006) ................................................................4

*Arcia v. Fla. Sec'y of State*,
   772 F.3d 1335 (11th Cir. 2014) ........................................................2

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985) ..........................................................................6

*Common Cause Ga. v. Kemp*,
   347 F. Supp. 3d 1270 (N.D. Ga. 2018) (Totenberg, J.) ......................2

*Common Cause/Ga. v. Billings*,
   554 F.3d 1340 (11th Cir. 2009) ........................................................4

*Curling v. Raffensperger*,
   397 F. Supp. 3d 1334 (N.D. Ga. 2019) (Totenberg, J.) ....................15

*Democratic Exec. Comm. of Fla. v. Lee*,
   915 F.3d 1312 (11th Cir. 2019) ......................................................15

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) ........................................................2

*Ga. Latino All. for Human Rights v. Governor of Ga.*,
   691 F.3d 1250 (11th Cir. 2012) ....................................................1, 9

*Gould v. Grubb*,
   536 P.2d 1337 (Cal. 1975) ......................................................4, 7, 10

*Graves v. McElderry*,
   946 F. Supp. 1569 (W.D. Okla. 1996) ......................................passim

*Green Party of Tenn. v. Hargett*,
   No. 16-6299, 2017 WL 4011854 (6th Cir. May 11, 2017) .................9

*Hand v. Scott,*
    888 F.3d 1206 (11th Cir. 2018) .......................................................................8

*Havens Realty v. Coleman,*
    455 U.S. 363 (1982).........................................................................................2

*Holtzman v. Power,*
    62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824
    (1970) ..................................................................................................4, 7, 11

*Jacobson v. Lee,*
    No. 4:18cv262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15,
    2019) ..........................................................................................................passim

*Kautenburger v. Jackson,*
    333 P.2d 293 (Ariz. 1958) .............................................................................4

*League of Women Voters of N.C. v. North Carolina,*
    769 F.3d 224 (4th Cir. 2014) .......................................................................14

*League of Women Voters v. Hargett,*
    400 F. Supp. 3d 706 (M.D. Tenn. 2019) ......................................................13

*Libertarian Party of Va. v. Alcorn,*
    826 F.3d 708 (4th Cir. 2016) .........................................................................4

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992).......................................................................................3

*Madera v. Detzner,*
    325 F. Supp. 3d 1269 (N.D. Fla. 2018) ........................................................13

*Mann v. Powell,*
    314 F. Supp. 677 (N.D. Ill. 1969), *aff'd,* 398 U.S. 955 (1970) ...............5, 7, 8, 9

*Martin v. Kemp,*
    341 F. Supp. 3d 1326 (N.D. Ga. 2018)....................................................13, 14

*McLain v. Meier,*
    637 F.2d at 1159 (8th Cir. 1980) ............................................................passim

*McLain v. Meier*,
    851 F.2d 1045 (8th Cir. 1988) ........................................................................3, 9

*Meyer v. Texas*,
    No. H-10-3860, 2011 WL 1806524 (S.D. Tex. May 11, 2011) ..........................9

*Netsch v. Lewis*,
    344 F. Supp. 1280 (N.D. Ill. 1972) ...............................................................4, 7

*New Alliance Party v. N.Y. State Bd. of Elections*,
    861 F. Supp. 282 (S.D.N.Y. 1994) ..........................................................5, 9, 11

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ............................................................................14

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .......................................................................................13, 14

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019) ...................................................................................4, 5

*Sangmeister v. Woodard*,
    565 F.2d 460 (7th Cir. 1977) .....................................................................4, 7, 10

*Sarvis v. Judd*,
    80 F. Supp. 3d 692 (E.D. Va. 2015) ...............................................................4, 9

*Smith v. Clinton*,
    687 F. Supp. 1310 (E.D. Ark. 1988) .................................................................14

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997) ...........................................................................................9

*United States v. Berks Cty.*,
    250 F. Supp. 2d 525 (E.D. Pa. 2003) ...............................................................13

*United States v. Georgia*,
    892 F. Supp. 2d 1367 (N.D. Ga. 2012) .............................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...........................................................................................3

## INTRODUCTION

Defendants offer nothing to rebut Plaintiffs' substantial evidence that the Ballot Order Statute skews Georgia's elections; instead, their response focuses almost entirely on arguing that the Court is powerless to do anything about it. Defendants are wrong on both the law and the facts. Federal courts have successfully adjudicated ballot order claims under well-established standards for decades, and every court to consider an analogous challenge has found for the plaintiffs on the merits. The evidence that Defendants *do* attach to their response, moreover, proves Georgia is fully capable of remedying Plaintiffs' constitutional injury in time for the November election by activating the name order rotation function already embedded in its voting systems. Doc. 34 ("Resp."), Ex. A, at ¶ 5 ("Dominion Decl."). Plaintiffs have standing to pursue this case, have acted diligently in seeking a preliminary injunction, and have established that all of the relevant factors weigh in favor of the requested injunction. Plaintiffs respectfully request the Court grant their motion.

## ARGUMENT

## I.  Both organizational and individual plaintiffs have standing.

While only one plaintiff needs standing for a matter to proceed, *see Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1258 (11th Cir. 2012), in this case, *all* Plaintiffs easily meet Article III's requirements.

First, "[i]t is well established that an organization" has "standing to sue on its own behalf where it can show the defendant's acts resulted in an impediment to the

organization's mission *or* diversion of its resources." *Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1288–89 (N.D. Ga. 2018) (Totenberg, J.) (emphasis added); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008). The DNC, DSCC, DCCC, the Democratic Party of Georgia, and Priorities USA each suffer from both types of injuries. The Ballot Order Statute frustrates their mission to elect Democrats *and* forces them to divert resources to combat the electoral advantage the Statute confers on competing candidates. Ex. D, ¶¶ 18–20; Ex. E, ¶ 13; Ex. F, ¶ 14; Ex. G, ¶¶ 11–12; *see also* Am. Compl. ¶¶ 19–23, Doc. 17.[1] The "consequent drain on" their resources is a "concrete and demonstrable injury." *Havens Realty v. Coleman*, 455 U.S. 363, 379 (1982); *see also Jacobson v. Lee*, No. 4:18cv262-MW/CAS, 2019 WL 6044035, at *5 n.9 (N.D. Fla. Nov. 15, 2019) (finding many of the same organizational plaintiffs had standing in challenge to nearly identical ballot order statute). Defendants assert that because they "will continue their work to elect Democrats" even if the Statute remains in place, Plaintiffs lack standing. Resp. at 24. But nothing that Defendants cite demands Plaintiffs show they will "divert[] funds to a wholly new mission," *id*. It is sufficient that their organizational activities are "impaired," *Havens Realty*, 455 U.S. at 379; *see also Arcia*, 772 F.3d at 1342.[2]

---

[1] Unless otherwise noted, all exhibits cited are to the Declaration of Elisabeth C. Frost in Support of Motion for Preliminary Injunction, Doc. 24.

[2] At least some of these Plaintiffs also have associational standing, which Defendants do not dispute or even address. *See* Am. Compl. ¶¶ 19, 22, 41, 47-48;

As for the individual Plaintiffs, all four have suffered (and absent an injunction, will continue to suffer) injuries that are traceable to the Ballot Order Statute and redressable by this Court. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988); *Graves v. McElderry*, 946 F. Supp. 1569, 1579 (W.D. Okla. 1996). While Defendants may not be able to eliminate primacy effects entirely, Resp. 24-25, they *can* redress the injury that they cause Plaintiffs by way of the Ballot Order Statute. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (observing plaintiff "need not show that a favorable decision will relieve [their] *every* injury"). In fact, if Defendants were to rotate the ballot order, it would effectively *negate* primacy effect by evenly distributing its impact. *See* Dominion Decl. ¶ 5 (voting systems operator can "turn on" rotation functionality Plaintiffs request "*if [the] state authorizes it*") (emphasis added). But even if ballot order were determined in some other way to give Democratic candidates an equal opportunity to be listed first in each election, that would at least randomize the impact of the primacy effect, eliminating the severe and systematic injuries now imposed by the Statute, which presently *ensures* the candidates and voters affiliated with a single political party will always be advantaged.[3]

---

*see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) (explaining organization can have standing as a "representative of its members").

[3] That Democratic candidates have been able to overcome the primacy effect in some elections is of no consequence. The Eleventh Circuit has made clear—in the context

## II.     This case is justiciable.

Defendants' argument that the Court should apply the "logic" of the Supreme Court's partisan gerrymandering decision in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), to this ballot order challenge is wholly misplaced. Resp. at 12. While partisan gerrymandering claims have been in search of a manageable legal standard for decades, *see id.* at 2497, the same is not true of ballot order claims, which courts have ably adjudicated for even longer. *See, e.g.*, *McLain*, 637 F.2d 1159; *Sangmeister v. Woodard*, 565 F.2d 460 (7th Cir. 1977); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972); *Kautenburger v. Jackson*, 333 P.2d 293 (Ariz. 1958); *Gould v. Grubb*, 536 P.2d 1337 (Cal. 1975); *Akins v. Sec'y of State*, 904 A.2d 702 (N.H. 2006); *Holtzman v. Power*, 62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970).

For the past 30 years, federal courts have adjudicated ballot order claims using the *Anderson-Burdick* test, without incident. *See, e.g.*, *Jacobson*, 2019 WL 6044035, at *11; *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 716 (4th Cir. 2016); *Graves*, 946 F. Supp. at 1578. This *includes* the cases Defendants cite to bolster their non-justiciability argument, in which courts considered the constitutionality of ballot order statutes using *Anderson-Burdick* rather than finding them non-justiciable. *See Sarvis v. Judd*, 80 F. Supp. 3d 692, 701 (E.D. Va. 2015) (explaining "[b]ecause the

_____

of voting rights no less—that "[f]or purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier." *Common Cause/Ga. v. Billings*, 554 F.3d 1340, 1351 (11th Cir. 2009).

ballot is an inherently and necessarily limited vehicle for political expression," its "format and structure . . . may implicate expressive rights and present a cognizable restriction for the purposes of conducting the *Anderson/Burdick* analysis"); *see also New Alliance Party v. N.Y. State Bd. of Elections*, 861 F. Supp. 282, 294–95 (S.D.N.Y. 1994) (applying *Anderson-Burdick*).

In fact, even the Supreme Court has ruled on the merits of a ballot order challenge, indicating it, too, was unconcerned with the ability of federal courts to adjudicate the constitutionality of such laws. *See Mann v. Powell*, 314 F. Supp. 677 (N.D. Ill. 1969), *aff'd,* 398 U.S. 955 (1970) (summarily affirming ruling that system giving one category of candidates a systemic advantage violated plaintiffs' constitutional rights); *Jacobson*, 2019 WL 6044035, at *3, *5, n.7 (finding *Mann* "would alone compel the conclusion that Plaintiffs' claims are justiciable"). Thus, unlike the partisan gerrymandering claims at issue in *Rucho*, the inquiry here does not require the creation of a new standard. *See* 139 S. Ct. at 2505 (questions involving "matters of degree" are permissible so long as there are "constitutional . . . provisions" or "common law" decisions "confining and guiding the exercise of judicial discretion"); *Jacobson*, 2019 WL 6044035, at *4 ("This case asks this Court to apply nothing more than 'basic equal protection principles' . . . and is therefore justiciable under any fair reading of *Rucho*.").

Defendants' claim that Plaintiffs ask this Court to find that "unthoughtful" votes do not deserve constitutional protection, or that "irrational" votes should be

weighted less than others, Resp. at 15-16, seriously mischaracterizes this action. Plaintiffs do not seek to have any election undone or to invalidate any ballot. They request entirely forward-looking relief to cure a systemic bias in Georgia's elections system, which the undisputed evidence shows has resulted in significant electoral advantages to the candidates of a single party. And they seek to do this by remedying the systemic part of the problem to even the playing field, not by rejecting a single ballot or denying anyone their constitutional rights. To credit Defendants' position would be to find that states could put a "thumbs up" next to the names of the state's preferred candidates, *see Jacobson*, 2019 WL 6044035, at *3, or could put the names of candidates of the favored party in a larger font. No one would reasonably argue this would be constitutional or nonjusticiable.

Plaintiffs have a constitutional right to equal treatment with those to whom they are similarly situated. The Ballot Order Statute's systemic favoritism of one party over another similarly situated one denies Plaintiffs that right. *See, e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also McLain*, 637 F.2d at 1166; *Graves*, 946 F. Supp. at 1579. The Court should reject Defendants' contention that it lacks the power to adjudicate this case.

## III.    Plaintiffs are likely to succeed on the merits.

Plaintiffs have demonstrated that the Ballot Order Statute imposes severe and discriminatory burdens on their constitutional rights. *See* Doc. 23 at 12-17. It arbitrarily treats similarly-situated parties differently based on an increasingly small

difference in vote share in a single election and, for years that follow, gives candidates of the Governor's party "a systematic advantage on the basis of their political affiliation." *Jacobson*, 2019 WL 6044035, at *11.

Defendants do not submit any evidence to rebut Plaintiffs' expert reports establishing that the Ballot Order Statute skews Georgia's elections. As for their attempts to critique that work, they are feeble and, ultimately, misguided. For example, Defendants state that, "[c]ontrary to Plaintiffs' claim, there is not uniform consensus regarding the extent of ballot primary effect among political scientists." Resp. at 7 n.10. But what Defendants fail to acknowledge is that the two studies they then cite to support that contention are the "*only* two publications" that Plaintiffs' expert Dr. Krosnick identified as outliers. Ex. B. at 20 (emphasis added). Dr. Krosnick repudiates those exact two studies in his report, pointing out, among other things, that both relied on an "error-laden dataset" with low statistical power. *See id*. at 20–22; *see also Jacobson*, 2019 WL 6044035, at *17 (finding, based on similar evidence, near-unanimous scientific consensus on primacy effects).

Defendants' assertion that primacy effect injuries are not of "constitutional concern," Resp. at 14, ignores the raft of precedent finding otherwise. *See, e.g*., *McLain*, 637 F.2d at 1167; *Sangmeister*, 565 F.2d at 468; *Jacobson*, 2019 WL 6044035, at *12-*19; *Graves*, 946 F. Supp. at 1580; *Netsch*, 344 F. Supp. at 1281; *Gould*, 536 P.2d at 1338; *Holtzman*, 62 Misc. 2d at 1024. In fact, Defendants fail to mention *Mann*, 314 F. Supp. 677, in which the U.S. Supreme Court *affirmed* a

ruling finding unconstitutional a ballot ordering system that gave one category of candidates a systemic advantage over others similarly situated.

*Mann* is directly on point and binding here. In that case, the district court issued a preliminary injunction suspending a practice that listed candidates on the ballot based on the order in which their nominating petitions were received and, when two petitions were received simultaneously, favored incumbents. 314 F. Supp. at 679. The court found the systemic favoring of incumbents—even when only to break a tie—unconstitutional, and issued a preliminary injunction requiring that ballot order in the upcoming election be determined by "nondiscriminatory means by which each" similarly-situated candidate (i.e., those whose petitions were received at the same time) must "have an equal opportunity to be placed first on the ballot." *Id*. The Supreme Court summarily affirmed, and that decision binds this Court. *See Hand v. Scott*, 888 F.3d 1206, 1208 (11th Cir. 2018); *Jacobson*, 2019 WL 6044035, at *11. Both the law at issue in *Mann* and the Ballot Order Statute in question here bestow upon one class of candidates the electoral advantage that flows from the primacy effect, in violation of equal protection principles.

Defendants' attempt to limit unconstitutional ballot order schemes to "incumbent-first" statutes or statutes that never contemplate any change in ballot order ignores that, in addition to the decision in *Jacobson*, 2019 WL 6044035, which invalidated a law that was *identical* to Georgia's Ballot Order Statute, in *McLain v. Meier*, 637 F.2d at 1159, the Eighth Circuit, too, found unconstitutional

another strikingly similar system. The only difference was, instead of determining ballot order based on the last gubernatorial election, the statute at issue in *McLain* determined it based on the last congressional election. *Id.* at 1166. Defendants also offer no coherent reason why incumbent-first statutes are unconstitutional, yet Georgia's incumbent-party Statute is not. While incumbency-first statutes give an advantage to specific candidates for whom voters have already expressed a preference, the Ballot Order Statute puts a thumb on the scale for *all* candidates associated with the incumbent Governor's political party, no matter how unrelated the seat, or whether voters have ever endorsed those candidates.

Instead of addressing *Mann*, *Jacobson*, or *McLain*, Defendants rely on distinguishable cases. Every single one involves minor party, independent, or write-in candidates challenging tiered ballot order systems that placed major party candidates at the top of the ballot and relegated non-similarly situated candidates to tiers lower down on the ballot. *See, e.g.*, *Green Party of Tenn. v. Hargett*, No. 16-6299, 2017 WL 4011854 (6th Cir. May 11, 2017); *Sarvis*, 80 F. Supp. 3d at 706; *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *18 (S.D. Tex. May 11, 2011); *New Alliance Party*, 861 F. Supp. at 284-85. A state's differential treatment of candidates who are not similarly situated to the major party candidates in order to facilitate election administration and minimize voter confusion is supported by Supreme Court precedent. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) (allowing states to "enact reasonable election regulations that may,

in practice, favor the traditional two-party system"). The same is decidedly *not* true of statutes that favor the candidates of one major political party to the consistent prejudice of another similarly situated major political party.[4]

In defense of the Ballot Order Statute, Defendants offer two nebulous rationales, neither of which are obviously connected to the Statute's favoritism of the last-elected Governor's party, much less sufficient to justify the burdens it imposes on Plaintiffs. *First*, Defendants claim that using the "most visible statewide race … ensure[s] the lowest degree of voter confusion," Resp. at 19, but fail to explain why they believe this is the case. Indeed, courts have regularly rejected voter-confusion arguments in similar challenges. *See, e.g.*, *Sangmeister*, 565 F.2d at 467; *Jacobson*, 2019 WL 6044035, at *20; *McLain*, 637 F.2d at 1167; *Gould*, 536 P.2d at 1346. Defendants offer nothing by way of explanation or evidence to persuade this Court to conclude differently. Defendants' second attempt to justify the Ballot Order Statute is even more puzzling. They claim that tying ballot order to the gubernatorial election makes sense because that is purportedly "the state race that voters are most likely to cast a vote in." Resp. at 19. Even if that were true, this

---

[4] Relatedly, Defendants take issue with the fact that Plaintiffs propose a remedy that would rotate only major political party candidates "to the exclusion of independents and lesser-known political parties." Resp. at 8. In doing so, Defendants ignore that the State itself "favor[s] major-party candidates over others," *id.*, through the tiered system established by O.C.G.A. § 21-2-285(c). Plaintiffs expressly do not challenge the method by which the State orders minor-party or independent candidates, *see* Am. Compl. ¶¶ 1, 28-29, nor would they have standing to do so. If a minor-party or independent candidate *were* to challenge that system, it may be appropriate to look to the cases upon which Defendants rely. In this case, they are inapposite.

incorrectly assumes that the State has no choice but to award ballot primacy up and down the ticket to a single political party based on the results of a single unrelated election. Defendants' contention that the gubernatorial election "is the least likely race on the ballot to fall victim to the primacy effect," based solely on arguments presented to a different court 26 years ago in a different case challenging a different statute, and in which the plaintiff presented *no* evidence in support of its claims, Resp. at 19 (quoting *New Alliance Party*, 861 F. Supp. at 289); *but see* 861 F. Supp. at 287, hardly justifies the demonstrated burdens imposed on Plaintiffs' by Georgia's Ballot Order Statute in 2020, as established by the undisputed evidence in this case.

In sum, Defendants here (as in similar cases decided by other courts) have failed to come forth with any legitimate government interest that could justify the Ballot Order Statute's consistent favoritism of the candidates of one political party under even rational basis review. *See also McLain*, 637 F.2d at 1168; *Jacobson*, 2019 WL 6044035, at *22; *Graves*, 946 F. Supp. 1569; *Holtzman*, 62 Misc. 2d at 1024. And here, the Ballot Order Statute is properly subject to heighted scrutiny, because, on its face, it is "not neutral," but "politically discriminatory." *Jacobson*, 2019 WL 6044035, at *22. Further, the undisputed evidence shows that the Ballot Order Statute gives candidates of the Governor's party a 4.2 percentage point advantage on average, a margin within which multiple recent elections have been decided. *See* Doc. 23, at 6-9; *see also Jacobson*, 2019 WL 6044035, at *22 (finding rational basis review did not apply in part because a primacy effect "of three or even five percent"

11

"[wa]s often a decisive proportion in terms of the spread between the candidates in a Florida election"). Thus, even if Defendants could cogently explain the nexus between the "justifications" they offer and the burdens imposed on Plaintiffs by the law's systemic favoritism of one similarly situated major party over another, Plaintiffs would still be highly likely to succeed on the merits.

## IV.   Plaintiffs will suffer irreparable harm without an injunction.

Defendants' response to Plaintiffs' strong showing that they will suffer irreparable harm in the absence of a preliminary injunction, *see* Doc. 23, at 20-22, is to simultaneously argue that the request for preliminary relief comes too soon and too late. To make this impressively contorted argument, Defendants first wrongly contend that the fact that the Ballot Order Statute has been in place for decades is reason to deny Plaintiffs' motion. *See* Resp. at 20. In support, Defendants rely heavily on the *Jacobson* court's denial of a preliminary injunction motion in July 2018. *See* Resp., Ex. B. But Defendants' reliance is misplaced and mischaracterizes the basis for that court's ruling. The *Jacobson* court's decision to deny that motion, which was filed mere months before the November election, was based on the fact that suit in that case was not filed until "almost four years [after] the last gubernatorial race that shaped the ballot order" after "[m]ultiple elections" had taken place using the order dictated by that election. *Id.* at 2.[5]

---

[5] Indeed, the same court later entered a permanent injunction of Florida's ballot order law, indicating the age of the law was not the sticking point. *Jacobson*, 2019 WL 6044035.

In contrast, this case and Plaintiffs' preliminary injunction motion were diligently filed less than one year after the triggering 2018 gubernatorial election, and more than one year before the 2020 election for which relief is sought. To foreclose relief here would run contrary to countless cases in which federal courts have preliminarily enjoined laws that have been on the books for years, particularly in the voting rights context. *See, e.g.*, *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1329 (N.D. Ga. 2018) (preliminarily enjoining Georgia's signature matching procedures, which had been in place for over a decade); *Madera v. Detzner*, 325 F. Supp. 3d 1269 (N.D. Fla. 2018) (requiring Spanish-language election materials in preliminary injunction despite long-standing practice of English-only election materials); *United States v. Berks Cty.*, 250 F. Supp. 2d 525, 543 (E.D. Pa. 2003) (same).

Defendants then turn around and argue that Plaintiffs' request for preliminary relief is *premature*, asserting "there is adequate time" before the next election "for this Court to develop a more robust record before ruling on Plaintiffs' claims" without causing Plaintiffs irreparable harm. Resp. at 21. But Plaintiffs need not seek preliminary relief on the eve of an election to establish irreparable harm. *See, e.g.*, *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 733 (M.D. Tenn. 2019) ("Forcing the plaintiffs to wait while a case winds its way through litigation would mean taking away chances to participate in democracy that will never come back."). In fact, to do so would run the risk of colliding with the *Purcell* doctrine, which

cautions courts against last-minute changes to election rules. *See Purcell v. Gonzalez*, 549 U.S. 1 (2006).[6]

## V.   The balance of the equities and the public interest favor Plaintiffs.

Plaintiffs have demonstrated that the balance of the equities and the public interest also weigh in favor of their requested relief, *see* Doc. 23, at 22-23, and nothing in the Response leads to the opposite conclusion. Instead, the single declaration Defendants submitted—from Dominion Voting Systems—underscores just how attainable and modest Plaintiffs' requested relief is. It explains that Georgia's Dominion products "have the capability of performing standard ballot rotation," Dominion Decl. ¶ 4, and this function can be easily "turn[ed] on" by Dominion "at any point," *id.* at ¶ 5. Far from describing any serious administrative difficulties in implementing the ballot rotation function, Dominion provides that rotation on the very devices Georgia uses is "easier to implement and much less costly" compared to other systems. *Id.* ¶¶ 3, 5; *see also id.* ¶ 8 ("county-by-county rotation is easier to implement").

---

[6] Defendants do not appear to dispute that holding another general election under the Ballot Order Statute would cause irreparable harm to at least the voter Plaintiffs. *See* Resp. at 20-21; *see also Smith v. Clinton*, 687 F. Supp. 1310, 1313 (E.D. Ark. 1988); *see also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Martin*, 341 F. Supp. 3d at 1340; Ex. E., ¶ 13. Defendants contend only that the Court should resolve Plaintiffs' claim on a "full trial on the merits" before the next election. Resp. at 20. While Plaintiffs are not opposed in principle to a consolidated preliminary injunction hearing and trial under Rule 65, provided the Court issues a ruling in time to effectuate injunctive relief for the November election, Defendants have not sought or proposed an expedited schedule that would enable that to happen.

At odds with their own submitted declaration, Defendants nevertheless argue that the administrative and financial costs of a preliminary injunction tilt the balance of the equities in their favor. Resp. at 25. But the only alleged costs Defendants point to relate to recertification, which "may" cost money, Dominion Decl. ¶ 7. Resp. at 9-10. Not only are the "potential hardships that Georgia *might* experience … minor when balanced against the right to vote," *United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012) (emphasis added), but Defendants' purported concerns about certification omit the undisputed fact that the process is *entirely within the Defendants' control*. *See* Dominion Decl. ¶ 5; *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019). Even more, the timeline for Dominion's initial certification was highly compressed to only 11 days. *Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1407 (N.D. Ga. 2019) (Totenberg, J.). Defendants offer no reason why re-certification could not take place on a similar timeline.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' prior briefing, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Dated: January 10, 2020                    Respectfully submitted,

**Adam M. Sparks**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Adam M. Sparks
Georgia Bar No. 341578

KREVOLIN & HORST, LLC
One Atlantic Center
1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Elisabeth C. Frost*
Jacki L. Anderson*
Zachary J. Newkirk*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
znewkirk@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for Plaintiffs*
*Admitted Pro Hac Vice*

16

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: January 10, 2020                    **Adam M. Sparks**
                                           *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: January 10, 2020                    **<u>Adam M. Sparks</u>**
                                           *Counsel for Plaintiffs*