# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

S.P.S., *ex rel.* SHORT, *et al.*,

        Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.*,

        Defendants.

CIVIL ACTION NO. 1:19-CV-04960-AT

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

LEGAL STANDARD.............................................................................................2

ARGUMENT ..........................................................................................................2

   I.   Plaintiffs have standing to challenge the Ballot Order Statute. .......................2

     A.  The Party Plaintiffs have standing. ...............................................3

     B.  The individual Plaintiffs have standing............................................8

   II.  This case is justiciable. ..................................................................10

   III. Plaintiffs have stated cognizable claims for relief. ........................................15

   IV. Laches does not bar Plaintiffs' claims...........................................................21

CONCLUSION .......................................................................................................25

# TABLE OF AUTHORITIES

**Cases** **Page**

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ........................................................................9

*Arcia v. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .......................................................8

*Ariz. Green Party v. Reagan*,
838 F.3d 983 (9th Cir. 2016) ..........................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................2

*Burdick v. Takushi*,
504 U.S. 428 (1992) .......................................................................16

*Carrington v. Rash*,
380 U.S. 89 (1965) .........................................................................13

*Clough v. Guzzi*,
416 F. Supp. 1057 (D. Mass. 1976) ...........................................18, 19

*Common Cause Ind. v. Marion Cty. Election Bd.*,
311 F. Supp. 3d 949 (S.D. Ind. 2018), *vacated on other grounds*,
925 F.3d 928 (7th Cir. 2019) .........................................................14

*Common Cause Indiana v. Lawson*,
937 F.3d 944 (7th Cir. 2019) ...........................................................6

*Common Cause v. Bolger*,
512 F. Supp. 26 (D.D.C. 1980) ........................................................8

*Cook v. Gralike*,
531 U.S. 510 (2001) .......................................................................15

*Crawford v. Marion County Election Board*,
472 F.3d 949 (7th Cir. 2007) ........................................................6, 7

*Crawford v. Marion Cty. Election Bd.*,
553 U.S. 181 (2008) ..............................................................13, 14, 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

*Culliton v. Bd. of Election Com'rs of DuPage Cty.*,
    419 F. Supp. 126 (N.D. Ill. 1976) ....................................................................11

*Democratic Exec. Comm. of Fla. v. Detzner*,
    347 F. Supp. 3d 1017 (N.D. Fla. 2018) *aff'd* 915 F.3d 1312 (11th
    Cir. 2019) ...................................................................................................22, 23

*Democratic Party of Ga., Inc. v. Crittenden*,
    347 F. Supp. 3d 1324 (N.D. Ga. 2018).............................................................4, 8

*Democratic Party of the U.S. v. Nat'l Conservative Political Action
    Comm.*,
    578 F. Supp. 797 (E.D. Pa. 1983) .......................................................................4

*Dobson v. Dunlap*,
    576 F. Supp. 2d 181 (D. Me. 2008)...................................................................25

*Duke v. Cleland*,
    5 F.3d 1399 (11th Cir. 1993) ..............................................................................2

*Envtl. Def. Fund v. Marsh*,
    651 F.2d 983 (5th Cir. 1981) .............................................................................21

*Fair Elections Ohio v. Husted*,
    770 F.3d 456 (6th Cir. 2014) ...............................................................................7

*Fla. Democratic Party v. Scott*,
    215 F. Supp. 3d 1250 (N.D. Fla. 2016) ...............................................................7

*Fla. State Conference of NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ...........................................................................4

*Fulani v. Hogsett*,
    917 F.2d 1028 (7th Cir. 1990) .....................................................................22, 24

*Fulani v. Krivanek*,
    973 F.2d 1539 (11th Cir. 1992) .........................................................................14

*Gaffney v. Cummings*,
    412 U.S. 735 (1973)...........................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                      **Page**

*Glassroth v. Moore,*
   335 F.3d 1282 (11th Cir. 2003) ..........................................................................10

*Gould v. Grubb,*
   14 Cal. 3d 661 (1975) ................................................................................11, 20

*Graves v. McElderry,*
   946 F. Supp. 1569,1579 (W.D. Okla. 1996)............................................9, 12, 17

*Hallums v. Infinity Ins. Co.,*
   945 F.3d 1144 (11th Cir. 2019) ...........................................................................3

*Hand v. Scott,*
   888 F. 3d 1206 (11th Cir. 2018) ........................................................................12

*Harper v. Va. State Bd. of Elections,*
   383 U.S. 663 (1966)...........................................................................................15

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982)..........................................................................................5, 6

*Hicks v. Miranda,*
   422 U.S. 332 (1975)...........................................................................................12

*Hill v. White,*
   321 F.3d 1334 (11th Cir. 2003) ........................................................................17

*Hunt v. Wash. State Adver. Comm'n,*
   432 U.S. 333 (1977)..............................................................................................7

*In re Sci.-Atlanta, Inc.,*
   239 F. Supp. 2d 1351 (N.D. Ga. 2002).................................................................2

*Indiana Democratic Party v. Rokita,*
   458 F. Supp. 2d 775 (S.D. Ind. 2006)...................................................................7

*Jacobson v. Lee,*
   No. 4:18cv262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov. 15,
   2019) ..........................................................................................................passim

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Kay v. Austin,*
    621 F.2d 809 (6th Cir. 1980) ..............................................................................25

*League of Women Voters of Fla., Inc. v. Detzner,*
    314 F. Supp. 3d 1205 (N.D. Fla. 2018) ............................................................23

*Libertarian Party of Va. v. Alcorn,*
    826 F.3d 708 (4th Cir. 2016) ....................................................................12, 20

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...........................................................................................2

*Mandel v. Bradley,*
    432 U.S. 173 (1977)...........................................................................................9

*Mann v. Powell,*
    333 F. Supp. 1261 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970) ........9, 10, 12, 13

*Marshall v. Meadows,*
    921 F. Supp. 1490 (E.D. Va. 1996) ..................................................................22

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.,*
    501 F.3d 1244 (11th Cir. 2007) ..........................................................................2

*McLain v. Meier,*
    637 F.2d 1159 (8th Cir. 1980) ..................................................................passim

*Meyer v. Texas,*
    No. H-10-3850, 2011 WL 1806524 (S.D. Tex. May 11, 2011) ........................18

*Miller v. Moore,*
    169 F.3d 1119 (8th Cir. 1999) ..........................................................................14

*Nader 2000 Primary Comm., Inc. v. Hechler,*
    112 F. Supp. 2d 575 (S.D.W.Va. 2000)............................................................23

*Nader v. Keith,*
    385 F.3d 729 (7th Cir. 2004) ............................................................................25

*Nat'l Law Party of U.S. v. Fed. Election Comm'n,*
    111 F. Supp. 2d 33 (D.D.C. 2000).......................................................................4

# TABLE OF AUTHORITIES

**Cases**                                                             **Page**

*Ne. Ohio Coal. for the Homeless v. Husted*,
   837 F.3d 612 (6th Cir. 2016) ..............................................................20

*Netsch v. Lewis*,
   344 F. Supp. 1280 (N.D. Ill. 1972) .....................................................11

*New Alliance Party v. N.Y. State Bd. of Elections*,
   861 F. Supp. 282 (S.D.N.Y. 1994) ...............................................12, 18

*OCA-Greater Hous. v. Texas*,
   867 F.3d 604 (5th Cir. 2017) ................................................................4

*One Wisconsin Inst., Inc. v. Thomsen*,
   198 F. Supp. 3d 896 (W.D. Wis. 2016) ...............................................14

*Owen v. Mulligan*,
   640 F.2d 1130 (9th Cir. 1981) .............................................................4

*Perry v. Judd*,
   471 F. App'x 219 (4th Cir. 2012) ..................................................22, 24

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*,
   533 F.3d 1287 (11th Cir. 2008) ....................................................21, 23

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019)...........................................................10, 13, 14

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
   547 U.S. 47 (2006).................................................................................8

*Sangmeister v. Woodard*,
   565 F.2d 460 (7th Cir. 1977) ........................................................11, 20

*Sarvis v. Judd*,
   80 F. Supp. 3d 692 (E.D. Va. 2015) ...................................................18

*Schaefer v. Lamone*,
   No. L-06-896, 2006 WL 8456798, at *3-4 (D. Md. Nov. 30, 2006),
   *aff'd* 248 F. App'x 484 .......................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*Schulz v. Williams*,
   44 F.3d 48 (2d Cir. 1994) .......................................................................4

*Smith v. Boyle*,
   144 F.3d 1060 (7th Cir. 1998) ................................................................4

*Soltysik v. Padilla*,
   910 F.3d 438 (9th Cir. 2018) ...........................................................14, 19

*Tashjian v. Republican Party of Conn.*,
   479 U.S. 208 (1986).............................................................................15

*Tex. Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) .............................................................3, 8

*Timmons v. Twin Cities Area New Party*,
   520 U.S. 351 (1997)........................................................................14, 18

*Tsongas v. Secretary of Commonwealth*,
   362 Mass. 708 (1972) ...........................................................................20

*Ulland v. Growe*,
   262 N.W.2d 412 (Minn. 1978) ..............................................................18

*United States v. Barfield*,
   396 F.3d 1144 (11th Cir. 2005) ............................................................23

*United States v. Students Challenging Regulatory Agency Procedures
   (SCRAP)*,
   412 U.S. 669 (1973)................................................................................3

*Walker v. Smokes*,
   No. 6:15-cv-57, 2018 WL 3241926 (S.D. Ga. July 3, 2018) .............19

*Warth v. Seldin*,
   422 U.S. 490 (1975)................................................................................7

*Williams v. Rhodes*,
   393 U.S. 23 (1968)................................................................................11

# TABLE OF AUTHORITIES

**Cases** **Page**

**STATUTES**

O.C.G.A. § 21-2-285(c) ............................................................................1

## INTRODUCTION

This case presents a straightforward question: Does the Constitution permit Georgia to maintain a ballot order system that favors certain candidates based on their political affiliation over others similarly situated? Georgia's Ballot Order Statute, O.C.G.A. § 21-2-285(c), does just that. By mandating that candidates who share their party with the last-elected Governor be listed first in every race on general election ballots, it confers a built-in and meaningful advantage upon all candidates of that party, up and down the ticket. This is because of a phenomenon known as "primacy effect" or "position bias," which causes people to manifest a bias toward the first-listed option in a visually presented list. Those involved in politics have long believed this carries over to the voting booth, but recent and now extensive studies erase all reasonable doubt: the order candidates are listed on the ballot has an impact on electoral success. Because of the Ballot Order Statute, that advantage has accrued in Georgia, to the Republican Party consistently since 2002.

Rather than grappling head on with the merits of Plaintiffs' important constitutional claims, Defendants raise a series of arguments designed to avoid judicial review altogether, all in an attempt to convince this Court that it cannot do what countless other courts (including the Supreme Court) have done before it: adjudicate the merits of a straightforward challenge to a ballot order statute that systemically and arbitrarily favors one class of similarly situated candidates over another by ensuring that they are listed first on the ballot. This case is not meaningfully different from those other cases. Defendants' motion should be denied.

## LEGAL STANDARD

Defendants' motion is brought under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Under both, the Court must accept all factual allegations in the Complaint as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993); *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Though the burden is on Plaintiffs to establish standing, "[a]t the pleading stage, general factual allegations of injury . . . may suffice, for on a motion to dismiss [the court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

A Rule 12(b)(6) motion, meanwhile, should only be granted when a court determines it is "beyond doubt" that the claimant cannot prove a plausible set of facts that support the claim and would justify relief. *Id*. To clear this bar, the Complaint simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Motions to dismiss are disfavored and are rarely granted." *In re Sci.-Atlanta*, *Inc.*, 239 F. Supp. 2d 1351, 1357, (N.D. Ga. 2002) (citation omitted).

## ARGUMENT

### I. Plaintiffs have standing to challenge the Ballot Order Statute.

The Constitution's requirement that a litigant allege an "injury-in-fact" to trigger federal jurisdiction is meant "to distinguish a person with a direct stake in the

outcome of a litigation," even if small, "from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 690 n.14 (1973). This demands only the smallest, "identifiable trifle" of an injury. *Hallums v. Infinity Ins. Co*., 945 F.3d 1144, 1147 (11th Cir. 2019) (quotation marks and citation omitted). Plaintiffs more than satisfy this standard. Defendants' arguments to the contrary cannot be reconciled with the large body of precedent discussed below.

### A.   The Party Plaintiffs have standing.

Plaintiffs include the Democratic Party of Georgia, Inc. ("DPG"), Doc. 17 ¶ 22; the DNC, the official national party committee of the Democratic Party, *id*. ¶ 19; the DSCC, the national senatorial committee of the Democratic Party, whose core missions include the election of Democrats to U.S. Senate across the United States, including from Georgia, *id*. ¶ 20; and the DCCC, which occupies the same position with regard to the U.S. House, *id*. ¶ 21, (collectively, the "Party Plaintiffs"). *See also id*. ¶ 23 (explaining Priorities works "to help elect Democratic Party candidates across the country, including in Georgia" in pursuit of its progressive agenda). That Plaintiffs have adequately alleged that each of these entities has been injured (and well beyond a mere "trifle") by the Ballot Order Statute should be beyond any serious debate. *See, e.g*., *id*. ¶¶ 19–23, 31, 40–41.

Courts routinely find that political party entities suffer a direct injury when laws impede their election prospects or disadvantage their candidates. *See, e.g*., *Tex.*

*Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (holding state party had standing based on "harm to its election prospects"); *Smith v. Boyle*, 144 F.3d 1060, 1061–63 (7th Cir. 1998) (holding state party had standing to challenge voting rules disadvantaging Republican candidates); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (holding Conservative Party official had standing to challenge opposing candidate's position on ballot where opponent "could siphon votes from" Conservative Party candidate); *Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981) (holding "potential loss of an election" was injury-in-fact sufficient to give Republican Party official standing); *Nat'l Law Party of U.S. v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 44, 47 (D.D.C. 2000) (holding "relative disadvantage to plaintiffs' candidacy and the injury to their interest in effectively voicing their political message" sufficient for standing); *Democratic Party of the U.S. v. Nat'l Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (three-judge panel) (holding Democratic Party had standing where challenged action "reduce[d] the likelihood of its nominee's victory" and thus "injured the Democratic party in more than an ideological way"). The same is true where the challenged law threatens the party's mission or causes the party to divert resources to combat it. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017); *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008); *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1336-38 (N.D. Ga. 2018).

Plaintiffs do not, as Defendants contend, merely allege some simple setback to their "abstract social interests." Doc. 37-1 at 6, 8 (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). The election of Democrats is the Party Plaintiffs' *raison d'etre*, and the Complaint's allegations that they have suffered injury as a result of the Ballot Order Statute, which has granted Republicans a significant advantage in Georgia's general elections for nearly 20 years, Doc.17 ¶¶ 15–23, 27–32, more than satisfies Article III's "minima of injury in fact: that the plaintiff allege that . . . he has suffered 'a distinct and palpable injury.'" *Havens Realty Corp*., 455 U.S. at 372 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Indeed, the allegations that Defendants claim are insufficient here are not meaningfully different than the "broad" allegations that defendants' actions had "perceptibly impaired" the plaintiff's ability to serve its mission that the Supreme Court found sufficient to satisfy standing at the motion to dismiss stage in *Havens Realty* itself. *See id*. at 379. *Compare id.* (plaintiff alleges it "has been frustrated by defendants' . . . practices in its efforts to" engage in its core function and "has had to devote significant resources to identify and counteract the defendant's" challenged practices (quotation marks and alteration omitted), *with* Doc. 17 ¶ 19 (alleging the Ballot Order Statute "frustrates [DNC's] mission and efforts to elect Democratic Party candidates in Georgia" and that Party Plaintiffs have "had to and will have to expend and divert funds . . . in order to combat the effects" of the

Statute), ¶¶ 20-23 (same with respect to DSCC, DCCC, Democratic Party of Georgia, and Priorities).

Defendants' assertion that Plaintiffs need to plead more is contrary not only to *Havens Realty* but also to the cases upon which Defendants themselves rely. Defendants lean heavily on *Common Cause Indiana v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019), but in that case, the Seventh Circuit *rejected* Indiana's argument that plaintiff voting rights organizations failed to make "a compelling enough showing of injury in fact" to satisfy Article III. In doing so, the court emphatically reiterated its finding in *Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007), "that a voting law can injure an organization enough to give it standing 'by compelling [it] to devote resources' to combatting the effects of that law that are harmful to the organization's mission." *Id*. (quoting *Crawford*, 472 F.3d at 951). The *Lawson* court was explicit. It was for that reason it had found in *Crawford*, "that a *political party* had standing to challenge an Indiana voting law" on the theory that the law "likely discouraged some of the party's supporters from voting." *Id*. (emphasis added); *see also Crawford,* 472 F.3d at 951 ("The fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury.").

The injury alleged here is even more concrete and direct: the Party Plaintiffs allege that the Ballot Order Statute compels them to devote resources to combatting the effects of that law that are harmful to their mission because the Statute puts *all*

of their candidates in Georgia at a substantial disadvantage from the outset of each and every election. Neither of the other cases that Defendants rely upon can support the conclusion that standing is not satisfied here. *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775 (S.D. Ind. 2006), was the district court opinion that on appeal became *Crawford*, and it (like *Crawford* itself) actually found that the Democratic Party *did* have standing. The language upon which Defendants rely to argue to the contrary was specifically addressing what that opinion referred to and defined as the "Organization Plaintiffs," a *different* set of plaintiffs separate and apart from the Democratic Party plaintiffs. *See id*. at 783-84. *Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014), meanwhile, (1) did not involve standing by a political party organization; (2) found that the plaintiff had failed to support standing with "specific facts" at the *summary judgment* stage; and (3) relied on the two other prongs of standing—traceability and redressability—neither of which Defendants argue are not satisfied here with respect to the Party Plaintiffs. *Id.* at 460. Indeed, that opinion specifically noted that if "a political party can marshal its forces more effectively by winning its lawsuit, that ought to be enough for Article III." *Id.*

While Plaintiffs' allegations are more than sufficient to establish direct standing, political parties also have associational standing to stand in the shoes of the candidates and voters whose interests they represent. *See Hunt v. Wash. State Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Warth*, 422 U.S. at 512; *see also Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1254 (N.D. Fla. 2016) (citing *Fla.*

7

*Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1078-79 (N.D. Fla. 2004)). Associational standing only requires a plaintiff to establish that "'at least one member faces a realistic danger' of suffering an injury." *Arcia v. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (quoting *Browning*, 522 F.3d at 1163). Here, the allegations in the Complaint more than satisfy this requirement. *Compare* Doc. 17 ¶¶ 19, 22 (identifying member interests of membership organization plaintiffs), *with Crittenden*, 347 F. Supp. 3d at 1336-38 (finding Democratic Party organizations had standing to challenge voting laws that would likely affect at least one Party member). Indeed, Defendants even concede that candidates have standing to challenge the Statute. Doc. 37-1 at 9–10. Yet, they fail to explain why the Court should find that Plaintiffs cannot stand in the shoes of those Democratic candidates who are harmed by the Statute. *See* Doc. 17 at ¶¶ 19–23 (identifying candidate interests of Party Plaintiffs); *Benkiser*, 459 F.3d 582 at 587 (holding that the Texas Democratic Party had associational standing on behalf of its member candidate whose electoral prospects were threatened); *Common Cause v. Bolger*, 512 F. Supp. 26, 31 (D.D.C. 1980) (holding organization had standing on behalf of its candidate members to challenge a statute governing legislative mail).

**B.    The individual Plaintiffs have standing.**

Since only one plaintiff needs standing for a case to proceed, *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006), and the Party Plaintiffs so clearly have it, the Court need not consider Defendants'

arguments that the individual Plaintiffs lack standing. That said, the allegations in the Complaint compel the finding that each individual Plaintiff has adequately pled standing as well. *See* Doc. 17 ¶¶ 15-18 (alleging Ballot Order Statute devalues each individual Plaintiffs' vote and burdens their ability to engage in effective efforts to elect Democratic Party candidates).

At least three federal courts have previously adjudicated through the merits ballot order challenges brought by voters on precisely the same theories alleged here. *See, e.g.*, *McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) (finding ballot order statute worked at "expense of . . . voters" who support disadvantaged candidates); *Jacobson v. Lee*, No. 4:18cv262-MW/CAS, 2019 WL 6044035, at *5 (N.D. Fla. Nov. 15, 2019) (recognizing individual plaintiffs "whose individual interests are affected by Florida's ballot order statute independent of their membership in an organization"); *Graves v. McElderry*, 946 F. Supp. 1569,1579 (W.D. Okla. 1996) (determining ballot order statute injured voters "by negating the weight or impact of these citizens' votes").[1]

---

[1] *Mann* does not require a finding otherwise. A "summary affirmance is an affirmance of the judgment only, [so] the rationale of the affirmance may not be gleaned solely from the opinion below." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977). While the lower court's opinion found that the voter-plaintiff did not have standing, that portion was not "essential to sustain [the] judgment" since other plaintiffs were deemed to have standing. *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5 (1983). The actual judgment in the lower court, meanwhile, enjoined Illinois' ballot order state and ordered a "nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot." *Mann v. Powell,* 333 F. Supp. 1261, 1267 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970).

## II.     This case is justiciable.

Defendants next attempt to convince the Court that, even if Plaintiffs have standing, it should not reach the merits, contending that it presents a "nonjusticiable political question beyond the jurisdiction of this Court." Doc. 37-1 at 10, To make this argument, Defendants rely primarily on two authorities—the Supreme Court's recent decision in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), and the Elections Clause—but neither actually supports Defendants' radical position.

*Rucho* held that *partisan redistricting* claims present political questions beyond the reach of federal courts because of the Court's inability to identify a judicially manageable standard for resolving those particular types of claims. *See* 139 S. Ct. at 2494. This was not for want of trying. Partisan gerrymandering claims had been in search of a judicially manageable standard for decades, but the Court repeatedly "struggled without success" to identify one. *Id*. at 2491. Accordingly, by the time *Rucho* came before it, the Court "ha[d] never struck down a partisan gerrymander as unconstitutional—despite various requests over the past 45 years." *Id*. at 2507.

---

Defendants thus ignore an obvious problem with their reliance on *Mann* for this point: the court reached the merits to find the ballot order statute unconstitutional, proving the point that as long as at least one plaintiff has standing, arguments about the others are ultimately irrelevant. *See also Glassroth v. Moore*, 335 F.3d 1282, 1293 (11th Cir. 2003) ("Having concluded that those two plaintiffs have standing we are not required to decide whether the other plaintiff . . . has standing.").

The same is manifestly *not* true of equal protection challenges to laws that govern the voting process, even when the challenge is to a law that advantages one political party over another. All the while that the Supreme Court was struggling to identify a judicially manageable standard for partisan gerrymandering claims, both it and lower federal courts applying its precedent were ably deciding precisely the types of claims that Plaintiffs bring here, without jurisprudential incident. In one of these cases, the Supreme Court explicitly rejected an argument markedly similar to the one Defendants raise here. *See Williams v. Rhodes*, 393 U.S. 23, 28 (1968) (holding in case regarding ballot access that "Ohio's claim that the political-question doctrine precludes judicial consideration of these cases requires very little discussion. That claim has been rejected in cases of this kind numerous times").

The intervening precedent provides no indication that the Supreme Court has changed its mind. Federal courts have proceeded to decide all manner of voting rights challenges outside the partisan gerrymandering context, including to ballot order schemes brought under the exact theory that animates Plaintiffs' claims—that an advantage is conferred upon first-listed candidates merely as a result of being first, and that laws that mandate that first position be occupied by certain types of candidates over others similarly situated violate equal protection. *See, e.g.*, *McLain*, 637 F.2d at 1167; *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977); *Culliton v. Bd. of Election Com'rs of DuPage Cty.*, 419 F. Supp. 126, 128-29 (N.D. Ill. 1976); *Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972); *Gould v.*

11

*Grubb*, 14 Cal. 3d 661, 669-70 (1975). And for the past 30-some years, federal courts have done it using the now familiar *Anderson-Burdick* balancing test. *See Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 717 (4th Cir. 2016); *Jacobson*, 2019 WL 6044035, at \*4; *Graves*, 946 F. Supp. at 1579; *New Alliance Party v. N.Y. State Bd. of Elections*, 861 F. Supp. 282, 294 (S.D.N.Y. 1994).

Even the Supreme Court has passed upon the constitutionality of a ballot order statute, indicating that the concerns about justiciability that had long troubled the Court in the partisan gerrymandering context are simply not present here. At issue in *Mann v. Powell* was a practice that ordered candidates based on when their nominating petitions were received and, when two were received simultaneously, favored incumbents. 314 F. Supp. at 679. The district court found this systemic favoritism of incumbents—even only as a tie-breaker—an "unlawful invasion of plaintiffs' Fourteenth Amendment right to fair and evenhanded treatment," *id.*, and issued a preliminary injunction requiring that ballot order be determined by a "nondiscriminatory means by which each" similarly-situated candidate (i.e., those whose petitions were received simultaneously) must "have an equal opportunity to be placed first on the ballot." *Id.* The Supreme Court summarily affirmed the district court's judgment, 398 U.S. 955, and that affirmance binds this Court. *See Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (holding "lower courts are bound by summary decisions by this Court until such time as this Court informs them they are not") (quotation marks omitted); *see also Hand v. Scott*, 888 F. 3d 1206, 1208 (11th

Cir. 2018). Like *Mann*, this case presents a simple question of equal protection to determine whether a state may, consistent with the Fourteenth Amendment, grant top ballot placement to one class of candidates, burdening other candidates similarly situated.

"The summary affirmance of *Mann* would alone compel the conclusion that Plaintiffs' claims are justiciable." *Jacobson*, 2019 WL 6044035, at *3. But *Rucho* also makes clear that redistricting is *sui generis* among election litigation. The "basic reason" the Court had so much trouble identifying a judicially manageable standard for partisan gerrymandering claims is that it has long been accepted that "a jurisdiction may engage in" some measure of "constitutional political gerrymandering." *Rucho*, 139 S. Ct. at 2497 (quoting *Hunt v. Cromartie*, 526 U.S. 541, 551 (1999)); *see also Gaffney v. Cummings*, 412 U.S. 735, 753 (1973). Thus, the "central problem" there is not "whether a jurisdiction has engaged in partisan gerrymandering" but when it has "gone too far." *Rucho*, 139 S. Ct. at 2497.

Outside of redistricting, however, states are generally forbidden from discriminating based on political views. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.,* 553 U.S. 181, 203 (2008) ("If [partisan] considerations had provided the only justification for a photo identification requirement, we may also assume that [the requirement] would suffer the same fate as the poll tax at issue in Harper."); *Carrington v. Rash*, 380 U.S. 89, 94 (1965) ("'Fencing out' from the franchise a sector of the population because of the way they may vote is constitutionally

impermissible."). And while "[a] partisan gerrymandering claim cannot ask for the elimination of partisanship," *Rucho*, 139 S. Ct. at 2502, any assertion that the design of the ballot is an inherently partisan activity contradicts federal law. *See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) ("Ballots serve primarily to elect candidates, not as forums for political expression."). Indeed, federal courts regularly adjudicate challenges to election laws that are alleged to benefit one political party or candidate precisely because the voting process is not meant to be partisan. *See, e.g.*, *Crawford*, 553 U.S. at 203 ("If [partisan] considerations had provided the only justification for a photo identification requirement, we may also assume that [the requirement] would suffer the same fate as the poll tax at issue in Harper."); *Soltysik v. Padilla*, 910 F.3d 438, 446 (9th Cir. 2018) (reversing motion to dismiss because party affiliation rule applied unequally between parties); *Miller v. Moore*, 169 F.3d 1119, 1125 (8th Cir. 1999) ("[W]hile states enjoy a wide latitude in regulating elections and in controlling ballot content and ballot access, they must exercise this power in a reasonable, nondiscriminatory, politically neutral fashion."); *Fulani v. Krivanek*, 973 F.2d 1539, 1544, 1548 (11th Cir. 1992) (holding statute allowing certain parties, but not others, to waive signature verification fees to access ballot violated equal protection under *Anderson-Burdick*); *Common Cause Ind. v. Marion Cty. Election Bd.*, 311 F. Supp. 3d 949, 974 (S.D. Ind. 2018), *vacated on other grounds*, 925 F.3d 928 (7th Cir. 2019) (noting partisanship not "legitimate basis" for closing voting locations); *One Wisconsin*

14

*Inst., Inc. v. Thomsen*, 198 F. Supp. 3d 896, 929 (W.D. Wis. 2016) ("The redistricting process is inherently political through and through, and a gerrymandering claim requires a court to decide how much partisan politics is too much. By contrast, voter qualifications and election administration should not be political at all, and partisan gain can never justify a legislative enactment that burdens the right to vote.") (citation omitted).

This Court can similarly dispense with Defendants' argument that the Elections Clause somehow makes state election laws immune from suit. History disagrees. *See, e.g.*, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 664–65 (1966) (invalidating Virginia's poll tax requirement as unconstitutional). "The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). Indeed, the Supreme Court has held that the Elections Clause is "not a source of power to . . . favor or disfavor a class of candidates." *Cook v. Gralike*, 531 U.S. 510, 523 (2001) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833-34) (1995).

## III. Plaintiffs have stated cognizable claims for relief.

As Defendants recognize, the standard for dismissal under Rule 12(b)(6) is a high one, Doc. 37-1 at 2–3, and it is not met here.

Defendants do not appear to dispute that Plaintiffs' claims are properly evaluated using the *Anderson-Burdick* balancing test, under which the Court must

carefully consider the character and magnitude of injury to the First and Fourteenth Amendment rights that a plaintiff seeks to vindicate against the precise interests the state puts forward to justify the burdens imposed by its rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 789). The test is fact intensive and requires an analysis of whether the means the state uses to achieve its interests properly fits those interests. Thus, "[h]owever slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weight to justify the limitation." *Crawford*, 553 U.S. at 191 (Stevens, J.) (controlling op.) (quotation marks omitted). There is no "litmus" test under which certain types of laws are immune from scrutiny; in each case, courts must evaluate the specific injuries plaintiffs suffer as a result of the challenged law, the specific justifications offered by the State for the law, and whether the law advances those interests sufficiently to justify the injuries to the plaintiffs. *Id*. at 190.

Plaintiffs allege that the Ballot Order Statute burdens their fundamental rights in two different ways. First, they assert that it burdens their right to vote, by providing an unfair and arbitrary disadvantage to candidates, voters, and supporters of the party not listed first. Doc. 17 ¶¶ 44–51. Second, they assert it violates their right to equal protection by treating similarly situated political parties differently in that one gets an arbitrary electoral advantage by way of the Statute's operation while the other does not. *Id*. ¶¶ 52–57. Defendants' argument that Plaintiffs have failed to state a cognizable claim largely ignores the allegations in the actual Complaint,

instead analogizing to different claims brought by different plaintiffs in distinguishable situations. Defendants also appear to presume that the facts will be decided in their favor, and at most, the Court will find that the Statute imposes a "minimal" burden on Plaintiffs' rights. Doc. 37-1 at 18. But this has the motion to dismiss standard exactly backward. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (courts must accept as true a complaint's factual allegations and evaluate inferences in the light most favorable to plaintiffs). Moreover, the severity of the Plaintiffs' injury resulting from the Ballot Order Statute is largely a factual question not easily susceptible to disposition on the pleadings. *See, e.g.*, *Ariz. Green Party v. Reagan*, 838 F.3d 983, 989 (9th Cir. 2016).

Moreover, multiple courts have adjudicated ballot order claims based on allegations indistinguishable from those Plaintiffs made here and found the laws at issue sufficiently burdensome to be unconstitutional. This was true most recently in *Jacobson v. Lee*, in which a federal district court in Florida invalidated a law that was *identical* to Georgia's Ballot Order Statute. 2019 WL 6044035, at *25. It was true in *McLain*, 637 F.2d at 1159, in which the Eighth Circuit held unconstitutional a ballot order system that prioritized candidates of the winner of the last congressional election. *Id.* at 1166. It was also true in *Graves*, 946 F. Supp. at 1582, in which the court found unconstitutional a statute that mandated that the "name of the Democratic party candidate for office always be printed in the top position." And these are only a few examples. *See also supra* at 11-12.

17

The cases described above presented circumstances and involved plaintiffs with claims incredibly similar to those at issue here. In contrast, the cases upon which Defendants rely are highly distinguishable. In fact, nearly all involved minor party, independent, or write-in candidates who brought challenges to tiered ballot order systems that put major party candidates in the top "tier" of the ballot and relegated non-similarly situated candidates to lower tiers, who sought parity with the major parties, usually without any evidentiary basis to support their claims. *See Meyer v. Texas*, No. H-10-3850, 2011 WL 1806524, at *6 (S.D. Tex. May 11, 2011) (independent write-in candidate seeking ballot access despite lacking necessary number of signatures); *New Alliance Party*, 861 F. Supp. at 295 (minor party challenge to tiered ballot order); *Sarvis v. Judd*, 80 F. Supp. 3d 692, 699 (E.D. Va. 2015) (same); *Ulland v. Growe*, 262 N.W.2d 412, 413 (Minn. 1978) (same). But a state's differential treatment of candidates who are not similarly situated to the major party candidates in order to facilitate election administration and minimize voter confusion is supported by Supreme Court precedent. *See Timmons*, 520 U.S. at 367. The same cannot be said about systemic differential treatment of the candidates of major political parties to the consistent advantage of one major political party, its candidates, and the voters who support it, and to the consistent prejudice of the other.

*Clough v. Guzzi*, 416 F. Supp. 1057, 1068 (D. Mass. 1976), is also inapposite. First, *Clough* was decided following a merits hearing, *id*. at 1060, and thus provides no support for rejecting Plaintiffs' claims on a motion to dismiss. Second, the statute

18

at issue was a unique system in which incumbents appeared first and were expressly identified as incumbents, *id.* at 1068, and the court concluded, based on the record presented to it, that "plaintiff [had] not proved a substantial advantage inherent in first ballot position *alone*," because the evidence did not uncouple the benefit from being in first position from the benefit of being explicitly designated as an incumbent. *Id.* at 1066 (emphasis added). Thus, *Clough* "involve[d] evidentiary considerations which do not apply here." *McLain*, 637 F.2d at 1167. *Schaefer v. Lamone* is also inapposite because it was a challenge to an alphabetical primary ballot—not one that systemically benefits one major party in a general election. No. L-06-896, 2006 WL 8456798, at *3-4 (D. Md. Nov. 30, 2006), *aff'd* 248 F. App'x 484.

Additionally, none of the interests Defendants provide justify the Ballot Order Statute's favoritism of the last-elected Governor's party *as a matter of law*, and to credit them as such would create the exact kind of "litmus test" that the Supreme Court warned against. *See Soltysik*, 910 F.3d at 447 ("But without any factual record at this stage, we cannot say that the Secretary's justifications outweigh the constitutional burdens on Soltysik as a matter of law."). Simply put, whatever the factual merits of these assertions (and Plaintiffs submit that none will prove to justify the burden that the Statute imposes on their rights), there is no legal basis for finding they outweigh the Plaintiffs' pleaded burdens at the motion to dismiss stage. *See Walker v. Smokes*, No. 6:15-cv-57, 2018 WL 3241926, at *9, n.4 (S.D. Ga. July 3,

19

2018) (explaining "in ruling on [a] Motion to Dismiss, the Court cannot engage in [a] factual analysis"); *see also Jacobson*, No. 4:18-CV-262, (July 24, 2018), Doc. 71. Indeed, nearly all of these interests are interests that other courts have found wanting in ballot order challenges. *See, e.g.*, *Sangmeister*, 565 F.2d at 467 (rejecting alleged interest in voter confusion); *Jacobson*, 2019 WL 6044035, at \*19-\*20 (rejecting argument that interests in uniformity and preventing voter confusion justified identical ballot order statute); *McLain*, 637 F.2d at 1167 (holding preventing voter confusion did not justify ballot order statute); *Gould*, 536 P.2d 1346 (same); *see also Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 634 (6th Cir. 2016) ("Nor does Ohio's interest in uniformity 'make it necessary to burden' the right to vote with a technical-perfection requirement.").

Defendants rely heavily on the decision in *Alcorn*, but this reliance is misplaced. Like the other cases discussed above, *Alcorn* was a challenge to a tiered ballot order system brought by a third-party candidate, and thus the state's interests were evaluated in an entirely different light, not appropriate here. *See, e.g.*, 826 F.3d at 720 (holding Constitution "permits [a state legislature] to decide that political stability is best served through a healthy two-party system"). Nor does *Tsongas v. Secretary of Commonwealth*, 362 Mass. 708 (1972), advance Defendants' cause. In that case, there was no evidentiary record on state interests or alternative ballot ordering schemes. *Id.* at 715. While the thin record before the state appellate court "establishe[d] that a candidate given first ballot position has a distinct advantage

20

over other candidates, . . . it contain[ed] no basis for evaluating the comparative advantages and disadvantages of alternative systems." *Id.* at 714–15. This holding has no bearing on whether these Plaintiffs here have alleged cognizable claim in the first place.

In sum, Plaintiffs have sufficiently alleged that the Ballot Order Statute imposes cognizable burdens on their right to vote and to equal protection.

## IV.   Laches does not bar Plaintiffs' claims.

Defendants next argue that, even if Plaintiffs have standing, and even if the case is justiciable, and even if Plaintiffs have stated a claim for relief, the Court should nevertheless dismiss the case from the outset because of the equitable defense of laches. This argument, too, is misplaced for several reasons.

First, as a legal matter, laches cannot bar this action because Plaintiffs seek *prospective* relief to take effect in *future* elections. "Laches serves as a bar only to the recovery of retrospective damages, not to prospective relief." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1321 (11th Cir. 2008); *see also id.* ("'The effect of laches is merely to withhold damages for infringement which occurred prior to filing of the suit.") (quoting *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir. 1980)); *Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1005 n.32 (5th Cir. 1981) (finding "laches may not be used as a shield for future, independent violations of the law" because "[t]he concept of undue prejudice, an essential element in a defense of

laches, is normally inapplicable when the relief is prospective"). This includes when prospective relief is sought "in close temporal proximity to an election." *Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1026 (N.D. Fla. 2018) *aff'd* 915 F.3d 1312 (11th Cir. 2019) (collecting cases).

Here, as Defendants themselves have admitted, *see* Doc. 34 at 21, there is plenty of time to address the issues Plaintiffs raise well in advance of the 2020 election for which they seek relief. Doc. 17 ¶¶ 15–23, 51, 57. In contrast, the cases upon which Defendants rely involve either 11th- (or even 13th-) hour challenges that left literally no time to impose a remedy, *see, e.g.*, *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (finding laches prevented minor political party's lawsuit challenging ballot-certification irregularities because state had already printed ballots and began absentee voting); *Perry v. Judd*, 471 F. App'x 219, 224–25 (4th Cir. 2012) (finding candidate barred from relief because he sought injunction to certify his name for ballot only *after* the certification deadline passed); *see also Marshall v. Meadows*, 921 F. Supp. 1490, 1492-94 (E.D. Va. 1996) (finding it too late for court to issue requested relief). Here, ballot preparation for the 2020 election has not begun.

Even if laches *could* apply, Defendants cannot satisfy its requirements. The Eleventh Circuit has recognized laches is an "extraordinary" remedy that only apply when the party invoking the defense can prove (1) the plaintiff unreasonably and inexcusably delayed; and (2) that delay has resulted in material prejudice to the

defendant. *Letterese*, 533 F.3d at 1321; *see also United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). Defendants cannot meet either requirement.

First, Defendants cannot show that Plaintiffs inexcusably delayed in filing this action. There is no requirement that voting rights plaintiffs bring suit as soon as they are aware of a constitutional violation. *Cf. Democratic Exec. Comm. of Fla.*, 915 F.3d at 1326 (holding plaintiff need not "search and destroy every conceivable potential unconstitutional deprivation, but could catch its breath, take stock of its resources, and study the result of its efforts"). Moreover, the current ballot order that causes injury to Plaintiffs was decided in the 2018 election. Doc. 17 ¶ 4. Had the Democratic candidate won that election, Plaintiffs would likely have not had standing to bring these claims. Plaintiffs brought this suit within 12 months of that election, more than a year before the 2020 election for which they seek relief. This is hardly the sort of delay upon which a claim of laches may be successfully made.

That some of the same Plaintiffs in this case challenged Florida's ballot order statute in 2018—and that other states' ballot order systems have been challenged in court—is not evidence that Plaintiffs inexcusably delayed in challenging *Georgia's* Statute. Plaintiff S.P.S., for example, will only be eligible to vote for the first time in 2020, and Defendants do not even attempt to argue that he was required to bring this case any earlier than he did. *But see League of Women Voters of Fla., Inc. v. Detzner*, 314 F. Supp. 3d 1205, 1224 n.20 (N.D. Fla. 2018) (rejecting argument suit is too late because individual voters were ineligible to vote earlier due to age); *Nader*

23

*2000 Primary Comm., Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 n.2 (S.D.W.Va. 2000) (finding court may not impute knowledge of voting rights violations from one plaintiff to another).

Second, Defendants have failed to establish that any delay has caused them undue prejudice. Defendants claim that they will suffer prejudice because Georgia "has already invested resources to prepare for an upcoming election" by purchasing a new voting system and the requested relief would come at a "high price" and a greater risk of chaos. Doc. 37-1 at 24. But this ignores that the new Dominion Voting System Georgia recently purchased "ha[s] the capability of performing standard ballot rotation"—a function that can be easily "turn[ed] on . . . at any point if a state authorizes it." Doc. 34-1, Ex. A ¶¶ 4–5. And by Defendants' own admission, Georgia is very much still implementing voting changes. *See* Doc. 37-1 at 24 (describing "the State has already been working to implement this new voting system"). Thus, it is not at all clear why implementing one more change causes Defendants undue prejudice.

In every case Defendants cite to support their argument, undue prejudice resulted from electoral processes that were *well* underway. *See Perry*, 471 F. App'x at 226–27 (denying candidate's requested relief to appear on primary ballot when overseas ballots were already printed and about to be shipped and in-person absentee voting arrangements were largely finalized); *Fulani*, 917 F.2d at 1031 (denying relief three weeks before election because voting was underway and ballots were

printed); *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (denying relief when election supplies had been completed and shipped and all preliminary work for balloting and machines was finished); *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 187–88 (D. Me. 2008) (denying injunctive relief after elections officials began printing ballots and when injunction "would have the effect of stopping the presses and would run the risk of restricting the voting rights of other voters, including overseas members of the military"); *see also Nader v. Keith*, 385 F.3d 729, 735 (7th Cir. 2004) (denying preliminary injunction challenging political party qualification statute when absentee ballots had already been sent out). In contrast, here, the 2020 general election for which Plaintiffs seek relief is not imminent; election supplies have not been mailed, ballot preparation has not begun, and no ballots have been cast. And, as discussed, Defendants concede that Georgia's new voting systems have not even been fully implemented. Doc. 37-1 at 24. Instead, this Court is faced with a timely lawsuit—filed, if the Court orders, to give ample time for Georgia's election officials to implement a process that no longer places Plaintiffs at a systemic disadvantage and conforms to the U.S. Constitution for future elections.

## CONCLUSION

Plaintiffs respectfully request this Court deny Defendants' motion to dismiss.

Dated: January 24, 2020                    Respectfully submitted,

**<u>Marc E. Elias</u>**

Marc E. Elias*
Elisabeth C. Frost*
Jacki L. Anderson*
Zachary J. Newkirk*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
znewkirk@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

Adam M. Sparks
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN & HORST, LLC
One Atlantic Center
1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309

26

Telephone: (404) 888-9700
Facsimile: (404) 888-9577

hknapp@khlawfirm.com
sparks@khlawfirm.com

*Counsel for Plaintiffs*
*\*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: January 24, 2020

**<u>Marc E. Elias</u>**
*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: January 24, 2020

<u>**Marc E. Elias**</u>
*Counsel for Plaintiffs*