# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

S.P.S., *ex rel.* SHORT, *et al.*,

      Plaintiffs,

v.

BRAD RAFFENSPERGER, *et al.,*

      Defendants.

CIVIL ACTION NO.
1:19-CV-04960-AT

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

ARGUMENT ................................................................................................1

I.  Plaintiffs satisfy Article III's injury-in-fact requirement. ...........................1

    A.  Plaintiffs have standing based on diversion of resources. ...................2

    B.  Plaintiffs have standing based on the injury the Statute poses to their and their candidates' electoral prospects. ................................7

    C.  The individual voter Plaintiffs have standing. ...................10

II.  This case is justiciable. ...........................................................11

CONCLUSION ................................................................................15

i

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Akins v. Sec'y of State*,
  904 A.2d 702 (N.H. 2006) ................................................................13

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)................................................................10, 11

*Arcia v. Fla. Sec'y of State*,
  772 F.3d 1335 (11th Cir. 2014) ............................................................3

*Bischoff v. Osceola Cnty.*,
  Fla., 222 F.3d 874 (11th Cir. 2000) ....................................................2

*Bullock v. Carter*,
  405 U.S. 134 (1972)................................................................10

*Common Cause/Ga. v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ............................................................5

*Crawford v. Marion Cty. Election Bd.*,
  553 U.S. 181 (2008)................................................................3

*Democratic Nat'l Comm. v. Reagan*,
  329 F. Supp. 3d 824 (D. Ariz. 2018), *aff'd*, 904 F.3d 686 (9th Cir.
  2018), *reh'g en banc granted*, 911 F.3d 942 (9th Cir. 2019), *rev'd
  on other grounds and remanded sub nom. Democratic Nat'l
  Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc) ..................................4

*Democratic Party of Georgia, Inc. v. Crittenden*,
  347 F. Supp. 3d 1324 (N.D. Ga. 2018)................................................6

*Florida State Conference of the NAACP v. Browning*,
  522 F.3d 1153 (11th Cir. 2008) ............................................5, 8, 9, 11

*Georgia Latino Alliance for Human Rights v. Governor of Georgia*,
  691 F.3d 1250 (11th Cir. 2012) ............................................................5

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)................................................................14

*Gould v. Grubb*,
  536 P.2d 1337 (Cal. 1975) ................................................................13

i

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Graves v. McElderry*,
  946 F. Supp. 1569 (W.D. Okla. 1996)...............................................12

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)....................................................................6

*Holtzman v. Power*,
  313 N.Y.S.2d 904 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824
  (1970)...................................................................................13

*Jacobson v. Florida Secretary of State*,
  957 F.3d 1193 (11th Cir. 2020) ............................................passim

*Kautenburger v. Jackson*,
  333 P.2d 293 (Ariz. 1958) ...........................................................13

*LaRoque v. Holder*,
  650 F.3d 777 (D.C. Cir. 2011).........................................................9

*Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*,
  475 F.3d 1228 (11th Cir. 2007) ....................................................14

*Mann v. Powell*,
  314 F. Supp. 677 (N.D. Ill. 1969), *aff'd* 398 U.S. 955 (1970) ............12

*McLain v. Meier*,
  637 F.2d 1159 (8th Cir. 1980) ......................................................12

*McLain v. Meier*,
  851 F.2d 1045 (8th Cir. 1988) ......................................................11

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ........................................................4

*Netsch v. Lewis*,
  344 F. Supp. 1280 (N.D. Ill. 1972)..................................................13

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ..........................................................4

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Owen v. Mulligan*,
   640 F.2d 1130 (9th Cir. 1981) ...............................................................................8

*Powell v. Mann*,
   Appellants' Jurisdictional Statement, No. 1359, 1970 WL 155703
   (U.S., Mar. 27, 1970) ............................................................................................12

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
   993 F.2d 800 (11th Cir. 1993) ...............................................................................2

*Rucho v. Common Cause*,
   139 S. Ct. 2484 (2019)...............................................................11, 13, 14, 15

*Sangmeister v. Woodard*,
   565 F.2d 460 (7th Cir. 1977) ...............................................................................12

*Schiaffo v. Helstoski*,
   492 F.2d 413 (3d Cir. 1974) ...............................................................................9

*Texas Democratic Party v. Benkiser*,
   459 F.3d 582 (5th Cir. 2006) ...............................................................................8

*United States v. Archer*,
   531 F.3d 1347 (11th Cir. 2008) ...........................................................................5

*Vote Choice, Inc. v. DiStefano*,
   4 F.3d 26 (1st Cir. 1993).......................................................................................4

## INTRODUCTION

Defendants do not contest that Plaintiffs' injuries are traceable to and redressable by Defendants. Doc. 59 at 16. Instead, they largely focus their arguments on Plaintiffs' injuries in fact, but their analysis is rife with errors. They ignore crucial differences between the allegations and record here and in *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020); they misstate and misapply the relevant law, overreading *Jacobson* far beyond what is reasonable; and they misconstrue Plaintiffs' evidence. Defendants' arguments regarding justiciability are also fatally flawed. They rely upon a concurrence written by a single judge as if it is binding and ignore decades of precedent from courts across the country adjudicating ballot order claims, all of which demonstrate that—unlike partisan gerrymandering claims—Plaintiffs' claims are easily adjudicated using familiar and judicially manageable standards. Because nothing in *Jacobson* bars their relief, Plaintiffs respectfully request that the Court grant their motion for preliminary injunction, Doc. 22, and deny Defendants' motion to dismiss, Doc. 37.

## ARGUMENT

### I.    Plaintiffs satisfy Article III's injury-in-fact requirement.

Defendants do not dispute that (1) the decision in *Jacobson* was rendered after a full trial on the merits, or (2) at this preliminary stage in the proceedings, Plaintiffs must satisfy a far lower bar of proof to survive Defendants' standing challenge. *See* Doc. 57 at 3-5. Instead, Defendants contend that Plaintiffs' allegations are not

sufficient to constitute an injury in fact under *Jacobson*. In doing so, Defendants mis- and over-read that decision and mischaracterize Plaintiffs' allegations and evidence here (as well as the lens through which the Court is obligated to view it). When properly construed, it is clear Plaintiffs have met the well-established standards for standing repeatedly applied by courts in this circuit, as well as those articulated specifically in *Jacobson* itself.[1]

### A.   Plaintiffs have standing based on diversion of resources.

Defendants first assert that *Jacobson* requires organizational plaintiffs not only to allege that the challenged law has caused them to divert resources, "but also to state what those resources are being diverted away *from*." Doc. 59 at 11. But Plaintiffs have done exactly that: they have asserted (and introduced evidence) that Georgia's Ballot Order Statue, and the inherent advantage it gives Republican

---

[1] Defendants are wrong to imply that the Court cannot consider the evidence in the record, as well as the allegations in the First Amended Complaint. Defendants' standing challenge is jurisdictional and thus arises under Rule 12(b)(1), which Defendants admit may be evaluated by looking beyond the Complaint's allegations. Doc. 59 at 5; *see also, e.g.*, *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 (11th Cir. 1993) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). And while it is true that the Court is not precluded from weighing contrasting *evidence* in evaluating standing under Rule 12(b)(1), Defendants cite nothing that would permit the Court to credit Defendants' bare assertions over Plaintiffs' evidence. In fact, even when defendants submit evidence that creates a factual dispute on standing, it is reversible error to weigh that evidence without holding an evidentiary hearing. *Bischoff v. Osceola Cnty.*, Fla., 222 F.3d 874, 879 (11th Cir. 2000). In this case, Defendants have *not* submitted *any* evidence to bring the facts presented by Plaintiffs into dispute. Defendants' assertion that the Court may simply reject Plaintiffs' evidence is incorrect.

2

candidates, has caused Plaintiffs to divert resources away *from* their activities in other states to combat the Statute's effects in Georgia. Doc. 57 at 11-12; Doc. 17 ¶¶ 19-23; Doc. 24-5 ¶¶ 18-19; Doc. 24-6 ¶ 8; Doc. 24-7 ¶¶ 12-14; Doc. 24-2 at 5. This is distinguishable from *Jacobson*, where the court found the plaintiffs never "explained what activities [they] would divert resources away *from* in order to spend additional resources on combatting the primacy effect," even at trial. 957 F.3d at 1206.

That Plaintiffs' resources are diverted from activities that support their core function of electing Democrats in other states in order to support their mission of electing Democrats in Georgia does not negate their standing. *Jacobson* does not support Defendants' contention that a diversion injury must involve spending resources on *abnormal* activities. *See id.* (finding simply that plaintiffs did not identify what activities would be impaired by spending more resources due to statute). And because *Jacobson* did not announce a new standard in this regard, Defendants are stuck with the well-established precedent—from this Court on up to the Supreme Court—finding it sufficient that a challenged law has caused plaintiffs to divert resources away from one activity that furthers their core mission to another that does the same. *See, e.g.*, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189, n.7 (2008) (affirming "Democrats ha[d] standing to challenge the validity" of a voter identification statute when appellate court found it would cause them to "work harder to get every last one of their supporters to the polls"); *Arcia v. Fla. Sec'y of*

3

*State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding standing where organizations whose "missions [] include[d] voter registration and education, or encouraging and safeguarding voter rights" "had diverted resources to address the Secretary's programs" limiting voter registration); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (holding organization whose "primary mission [wa]s voter outreach and civic education" had standing when it had to "spend extra time and money educating its members about [] Texas [voting laws] and how to avoid their negative effects"); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) (holding plaintiffs had standing when "[r]esources Plaintiffs put toward registering someone who would likely have been registered by the State, had it complied with the N[ational] V[oter] R[egistration] A[ct], [we]re resources they would have spent on some other aspect of their organizational purpose, such as registering voters the NVRA's provisions do not reach"); *Vote Choice, Inc. v. DiStefano*, 4 F.3d 26, 37 (1st Cir. 1993) (finding candidate showed injury-in-fact when a public finance law had an "impact on the strategy and conduct of an office-seeker's political campaign"); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding plaintiffs DNC, DSCC, and Arizona Democratic Party had standing to challenge laws that required them "to retool their GOTV strategies and divert more resources to ensure that low-efficacy voters are returning their early mail ballots . . . [and] to educate their voters" on those laws), *aff'd*, 904 F.3d 686 (9th Cir. 2018), *reh'g en banc granted*, 911 F.3d 942 (9th Cir. 2019), *rev'd*

*on other grounds and remanded sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc).

In particular, *Jacobson* did not (and could not) overrule the Eleventh Circuit's prior decisions finding the injury-in-fact requirement satisfied where organizations involved in political activities are driven to reallocate their funding as a result of a challenged law. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*."). In fact, *Jacobson* approvingly cited *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1163 (11th Cir. 2008), *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009), and *Georgia Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1260 (11th Cir. 2012), making it clear that those cases not only remain good law, but informed the *Jacobson's* court's decision on standing. As *Jacobson* recognized, *Browning* found the injury-in-fact requirement met where plaintiffs asserted that a challenged law diverted "resources [that] would otherwise be spent on registration drives and election-day education and monitoring." *Jacobson*, 957 F.3d at 1206 (quoting *Browning*, 522 F.3d at 1166). In *Common Cause/Georgia*, the Circuit similarly found the requirement met where "resources would be diverted 'from 'getting voters to the polls' to helping them obtain acceptable photo identification.'" *Id.* (quoting *Common Cause/Ga.*, 554 F.3d at 1350). And in *Georgia Latino Alliance*

*for Human Rights*, the plaintiff had to "cancel[] citizenship classes to focus on" increased inquiries about a new citizenship law to further its mission. *Id.* at 1206 (quotation omitted). The situation here is not materially different: because of the Ballot Order Statute, Plaintiffs have had to divert resources from supporting the elections of Democrats in other states to put more resources in races in Georgia, in order to help Democrats running for office here overcome the systemic disadvantage that they face as a direct result of the Statute. *See* Doc. 17 ¶¶ 19-23; Doc. 24-5 ¶¶ 18-19; Doc. 24-6 ¶ 8; Doc. 24-7 ¶¶ 12-14; Doc. 24-2 at 5.

Consistent with this long line of precedent, in *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018), this Court rejected the notion that political parties must show that they have "diverted [] resources from what they would normally be doing during an election campaign." *Id.* at 1337. In a holding entirely in line with *Jacobson*, this Court correctly concluded that "[t]he Plaintiffs' diversion of resources from preparation for the upcoming runoff elections to assisting individuals impacted by the handling of absentee and provisional ballots," both of which furthered their core function of supporting Democratic candidates, "[wa]s all the injury needed to meet the injury-in-fact requirement." *Id.* at 1337 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see also Havens*, 455 U.S. at 379 ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests."). So,

too, here. Organizational Plaintiffs' diversion of resources from their efforts to elect Democrats in other states to their efforts to elect Democrats in Georgia is enough to prove standing. *See* Doc. 57 at 11-12.

### B. Plaintiffs have standing based on the injury the Statute poses to their and their candidates' electoral prospects.

Separate and apart from the diversion of resources theory, the political party Plaintiffs independently satisfy the injury-in-fact requirement because they have credibly alleged (and through the evidence submitted in support of the preliminary injunction motion, proved) that their electoral prospects and those of their candidate members are harmed by the Statute. *See* Doc. 57 at 5-11; Doc. 17 Doc. 17 ¶¶ 19-22; Doc. 24-5 ¶¶ 20-21; Doc. 24-6 ¶ 8; Doc. 24-7 ¶ 11; Doc. 24-8 ¶¶ 8, 13, 15; Doc. 24-2 at 5. Their injury is in no way undermined absent proof of the exact size of primacy effects in specific upcoming races in November—especially when those elections have not yet taken place. *Jacobson* says *nothing* about the level of specificity of primacy effect injury a plaintiff must show at the motion to dismiss or preliminary injunction stage. *See generally* 957 F.3d at 1193. Indeed, despite Defendants' claims to the contrary, *Jacobson* does not even hold that a plaintiff must prove the *exact size* of the primacy effect in a specific election at the trial stage. Under *Jacobson*, it is enough that a plaintiff proves that primacy effects *exist* in an election. *See* 957 F.3d at 1203 (requiring plaintiffs to show the "existence *or* size of the primacy effect in any given election") (emphasis added).

7

As noted above, *Jacobson* also did not overrule the Circuit's prior decision in *Browning*, which found injury sufficient for standing at the preliminary injunction stage even when plaintiffs were unable to calculate future harm with exact specificity pre-election. *See* 522 F.3d at 1163. Specifically, *Browning* held that plaintiff organizations suffered an injury-in-fact sufficient to satisfy Article III at the preliminary injunction stage based on their members' "probabilistic injuries" in the next election, even when they could not identify with exact precision the future error rate under a law that required voter registration information to match existing government database information. *See id.* The Court thus applied a general error rate of "about one percent" to approximate how many of plaintiffs' 20,000 members would be harmed by the law "going forward" in the next election. *See id.* Here, too, Plaintiffs have provided sufficient support for their injury pre-election by citing the average primacy effect in Georgia for presidential year elections. *See* Doc. 57 at 13-14.

Plaintiffs also do not need to identify specific members who will be harmed in the upcoming election in order to have established standing. *See* Doc. 57 at 6-8. The threat that the Ballot Order Statute poses to the electoral prospects of Democratic candidates up and down the ticket is not just an associational injury—it is one that harms the organizational Plaintiffs *directly*. *See Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding Texas Democratic Party had direct standing based on "harm to its election prospects"); *Owen v. Mulligan*, 640

F.2d 1130, 1132–33 (9th Cir. 1981) (finding standing for Republican committee members where they "seek to prevent their opponent from gaining an unfair advantage in the election process"); *see also LaRoque v. Holder*, 650 F.3d 777, 786 (D.C. Cir. 2011) (finding standing where candidate alleged that the partisan-elections system "injures him by providing a competitive advantage to his Democratic opponents," noting "we have held that such competitive injuries in the electoral arena can confer Article III standing"); *Schiaffo v. Helstoski*, 492 F.2d 413, 422 (3d Cir. 1974) ("[I]t may properly be contended that the damage []allegedly unauthorized mailings caused [a candidate's] electoral prospects constitutes a noneconomic harm."). Even Defendants admit that *Jacobson* did not explicitly address this basis for standing. Doc. 59 at 16. And even if the harm to Democratic candidates is viewed as an *associational* injury, the Eleventh Circuit rejected Defendants' argument in *Browning*, finding that, at least at the preliminary injunction stage, plaintiffs had associational standing even when they did not name specific members who would be harmed in the coming election. 522 F.3d at 1160; *see also* Doc. 57 at 6-8.

In any event, Plaintiffs *have* identified specific candidate members who are virtually certain to be harmed in the upcoming election. *See* Doc. 57 at 8-10; *see, e.g.*, Doc. 24-6 ¶¶ 6-7, 10; Doc. 24-7 ¶¶ 10-11; Doc. 24-2 at 5. In this way, too, this case is distinguishable from *Jacobson*, in which the Eleventh Circuit found that the plaintiffs did not identify any specific candidate members who were injured by the

existence of primacy effects, even at trial. 957 F.3d at 1204-06; *see also id.* at 1206 (suggesting standing may be satisfied if "a particular candidate's prospects in a future election will be harmed").

### C.     The individual voter Plaintiffs have standing.

Finally, although the Court need only find one plaintiff has standing for this matter to proceed (and to grant the Plaintiffs' preliminary injunction), individual voter Plaintiffs S.P.S., Natalie Short, Edwin Prior, and Angie Jones also have standing. Defendants' contention that the voter Plaintiffs' asserted injury is nothing more than a "legal conclusion," Doc. 59 at 8, misunderstands Plaintiffs' allegations. The voter Plaintiffs allege that their First Amendment right to vote and associate with others to advance their political interests is harmed by the head start the Ballot Order Statute gives to the opponents of the candidates they support. *See* Doc. 17 ¶¶ 15-18; Doc. 24-9 ¶ 3; Doc. 24-11 ¶ 3; Doc. 24-12 ¶ 3. This is a cognizable burden on and injury to these voters that flows from the Supreme Court's decision in *Anderson* itself. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 806 (1983) (noting each provision of a state's election code "inevitably effects—at least to some degree—the individual's right to vote and his right to associate with others for political ends," and the Court's "primary concern" is "the interests of the voters who chose to associate together to express their support" for candidates and their views); *see also Bullock v. Carter*, 405 U.S. 134, 143 (1972) ("[T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates

10

always have at least some theoretical, correlative effect on voters."); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (relying on *Anderson* in finding that candidate had standing to challenge North Dakota ballot order law due to his "injury as a voter"); Doc. 17 ¶¶ 15-18; Doc. 24-9 ¶ 3; Doc. 24-11 ¶ 3; Doc. 24-12 ¶ 3.

As with the organizational Plaintiffs, the voter Plaintiffs need not prove the exact primacy effect advantage that Republican candidates will receive in each of the upcoming 2020 races in order to establish standing, especially at this pre-election preliminary injunction stage. *See* Section B, *supra*; *see also Browning*, 522 F.3d at 1163. Thus, although the Court need not reach the question because the organizational Plaintiffs so clearly have standing, the individual voter Plaintiffs also have standing.

## II.     This case is justiciable.

Defendants urge the Court to do what the other two judges on the panel in *Jacobson* would not, and adopt the reasoning of Judge William Pryor's concurrence regarding the effect of *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019), on the justiciability of ballot order claims. A concurrence written by a single circuit court judge has no precedential value.

But that fundamental problem aside, finding that this case presents a nonjusticiable political question would go against fifty years of precedent in which courts have ably adjudicated ballot order claims, first under traditional equal protection principles and, for the last few decades, under the *Anderson-Burdick* test.

11

Even the Supreme Court has passed on a ballot order challenge, summarily affirming an injunction of a scheme that awarded first position to a certain category of incumbents. *See Mann v. Powell*, 314 F. Supp. 677, 678-79 (N.D. Ill. 1969), *aff'd* 398 U.S. 955 (1970). The appellants in that case made the argument that the case raised a non-justiciable political question, but the Supreme Court clearly disagreed.[2]

Nor is *Mann* the only decision to adjudicate a challenge to a ballot order statute—far from it. Multiple federal and state courts have successfully done the same, applying the familiar standards discussed above—including those in which plaintiffs successfully argued that statutes automatically elevating candidates from a particular political party to first position were unconstitutional. *See McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) (finding state's "favoritism" of political party that received the most votes in last congressional election unconstitutional); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977) ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party . . . or the 'majority' party"); *Graves v. McElderry*, 946 F. Supp. 1569, 1582 (W.D. Okla. 1996) (finding unconstitutional ballot order statute that

---

[2] *See Powell v. Mann*, Appellants' Jurisdictional Statement, No. 1359, 1970 WL 155703, at *5-6 (U.S., Mar. 27, 1970) (asserting among "questions presented" for Court's review: "(1) Does the complaint state a claim within the judicial Power of the United States; or, the judicial power generally? . . . (5) Does the 'political question doctrine' . . . permit federal judicial cognizance of political cases, involving inter- or intra-party election disputes?"); *see also id*. at *21 (arguing Court should find lower court lacked jurisdiction due to "[t]he lack of predeterminable federal standards, based on some neutral principle [which are] too subjective to allow federal courts in the antagonistic climate of pre-election politics").

required Democrats always be listed first on ballot); *see also Netsch v. Lewis*, 344 F. Supp. 1280, 1281 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violated equal protection); *Holtzman v. Power*, 313 N.Y.S.2d 904, 908 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824 (1970) (finding no rational basis for "favoritism to a candidate merely on the basis of his having been successful at a prior election"); *Kautenburger v. Jackson*, 333 P.2d 293, 294 (Ariz. 1958) (affirming judgment declaring ballot-order statute unconstitutional and "directing the names of candidates be rotated . . . in the most practicable and fair way possible"); *Gould v. Grubb*, 536 P.2d 1337, 1338-39 (Cal. 1975) (striking down incumbent-first statute); *Akins v. Sec'y of State*, 904 A.2d 702, 708 (N.H. 2006) (holding unconstitutional statute requiring that party receiving most votes in last election be listed first). Simply put, this is a case that is easily resolved using familiar judicially manageable standards.

Compare this history with that in the partisan gerrymandering context, in which the Court had never "stuck down a districting plan as an unconstitutional partisan gerrymander, and ha[d] struggled without success over the past several decades to discern judicially manageable standards for deciding such claims." *Rucho*, 139 S. Ct. at 2491. In *Rucho*, the Court held that it was finally giving up on this long-running search for a standard. *See id.* at 2508. Moreover, it could not have been clearer that non-justiciability is the exception, not the rule, noting that the unique issues involved in partisan gerrymandering present the "rare circumstance"

in which "the absence of a constitutional directive or legal standard[]" to guide the courts rendered the claims non-justiciable. *Id*. As the raft of cases discussed above illustrate, ballot order challenges do not present a similar "rare circumstance."

Defendants place significant weight on the *Jacobson* majority's citation to *Gill v. Whitford*, 138 S. Ct. 1916 (2018), in arguing that this case presents a nonjusticiable question, *see* Doc. 59 at 17-19, but neither the connection nor the relevance is clear. Yes, the *Jacobson* majority cited to *Gill* in discussing standing, and *Rucho* also cited to *Gill* (because *Gill*, like *Rucho*, involved questions of partisan gerrymandering). But the fact that both cited to *Gill* does not mean that the Court should read the *Jacobson* majority to have somehow implicitly joined Judge Pryor's concurrence on the justiciability issue. If the *Jacobson* majority wanted to rely on *Rucho* to hold ballot order a nonjusticiable political question, it would have done so explicitly rather than in this convoluted and utterly obtuse fashion. *Cf. Main Drug, Inc. v. Aetna U.S. Healthcare, Inc.*, 475 F.3d 1228, 1231 (11th Cir. 2007) ("[I]t is well-established circuit law that we are not bound by a prior decision's *sub silentio* treatment of a jurisdictional question.") (quotation marks and citation omitted).

But Defendants also misstate *why Gill* was cited in both cases. They claim that both the *Jacobson* majority and the *Rucho* court relied on *Gill* for the assertion that the judiciary is not responsible for vindicating partisan preferences, Doc. 59 at 18-19, but *Jacobson* did nothing of the sort. It merely cited to *Gill* for the proposition that the partisan preferences of the *Jacobson* voter plaintiffs, standing alone, were

14

not a sufficient injury for Article III standing. *See Jacobson,* 957 F.3d at 1204. This is a far cry from Defendants' assertion, which appears to be that both *Jacobson* and *Rucho* stand for the proposition that "the judiciary is ill-equipped to vindicate" challenges to *any* law which "implicates questions of partisan preference." Doc. 59 at 19. While this position was adopted by a single judge in concurrence, the *Jacobson* majority said no such thing. Defendants' attempt to forge a connection here falls apart on even cursory scrutiny.

In sum, *Rucho* has no applicability to the issues before this Court, and the claims here do not present a nonjusticiable political question. Rather, *Anderson-Burdick* provides the Court a straightforward roadmap to consider the issues presented here and to rule in Plaintiffs' favor.

## CONCLUSION

For the above reasons, as well as those set forth in previous briefing, Plaintiffs respectfully submit that the Eleventh Circuit's opinion in *Jacobson* is entirely distinguishable from this case.

Dated: June 12, 2020                    Respectfully submitted,

                                        **Adam M. Sparks**
                                        Halsey G. Knapp, Jr.
                                        Georgia Bar No. 425320
                                        Adam M. Sparks
                                        Georgia Bar No. 341578
                                        KREVOLIN & HORST, LLC
                                        One Atlantic Center

15

1201 W. Peachtree St., NW, Suite 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Elisabeth C. Frost*
Jacki L. Anderson*
Zachary J. Newkirk*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jackianderson@perkinscoie.com
znewkirk@perkinscoie.com

Abha Khanna*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
akhanna@perkinscoie.com

*Counsel for Plaintiffs*
*Admitted Pro Hac Vice*

16

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: June 12, 2020

**Adam M. Sparks**
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: June 12, 2020

**Adam M. Sparks**
*Counsel for Plaintiffs*