IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| S.P.S. ex rel. SHORT, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 1:19-cv-4960-AT |
| v. | : | |
| | : | |
| BRAD RAFFENSPERGER, et al., | : | |
| | : | |
| Defendants. | : | |

# **ORDER**

This case challenging the constitutionality of Georgia's ballot order statute is before the Court on Plaintiffs' Motion for Preliminary Injunction [Doc. 22] and Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. 37].

The law at issue here, O.C.G.A. § 21-2-285(c),[1] requires that candidates who share the same party affiliation as the most recently elected Governor to be listed first on the ballot in every partisan race in the State's general elections. Plaintiffs contend that candidates listed first in a race on the ballot receive an electoral benefit solely due to their ballot priority position as a result of a phenomenon known as the "primacy effect" that gives first-listed candidates a meaningful and arbitrary advantage over all of their opponents. (Am. Compl. ¶ 3.) The individual voters and political party organizations who are Plaintiffs in this case brought claims under the First and Fourteenth Amendments, asserting

---

[1] The relevant portion of the statute requires that candidates must be listed "in the descending order of the totals of votes cast for candidates of the political parties for Governor at the last gubernatorial election." O.C.G.A.§ 21-2-285(c).

Case 1:19-cv-04960-AT   Document 68   Filed 08/13/20   Page 2 of 9

that Georgia's ballot order statute injures Plaintiffs, their constituencies, and the candidates they support, by: (i) treating them differently from the similarly-situated Republican Party and its candidates and voters, solely because a Republican won the last gubernatorial election; and (ii) diluting the vote of Democratic voters relative to that of voters who cast ballots for Republican candidates solely due to their first position on the ballot. (*Id.* ¶¶ 6, 15, 47-48.)

Plaintiffs have moved for a preliminary injunction that prohibits Defendants from enforcing the ballot order statute in the November 2020 general election and beyond. (Mot. for Prelim. Inj., Doc. 23 at 7.) They also request that the Court require that Georgia use a non-discriminatory system giving similarly situated major-party candidates an equal opportunity to be listed first. (*Id.*) In support of their request for relief, Plaintiffs rely on the expert opinions of two Stanford University political scientists, Dr. Jonathan Rodden, PhD, and Dr. Jon A. Krosnick. According to his study of Georgia elections from 1990 to the present, and the "the *relative* disadvantage . . . experienced by the party that is consistently listed second on the ballot during each period," Dr. Rodden found that "on average," Republicans have enjoyed a 4.2 percentage point advantage in Georgia as a result of being listed first on the ballot in all elections since 2004. (Ex. A to Pls.' Mot. for Prelim. Inj., Doc. 24-2 at 4-6) (emphasis in original). Dr. Krosnick opines that "[l]isting a candidate's name first on the ballot almost always accords that person an advantage in gaining votes, called a 'primacy effect,'" and that "[b]ecause primacy effects have been found virtually everywhere

2

that candidate name order effects have been studied, it is extremely likely that primacy effects have occurred and will occur in Georgia." (Ex. B to Pls.' Mot. for Prelim. Inj., Doc. 24-3 at 3.)  Dr. Krosnick's opinions are based on extensive literature regarding primacy effect in elections and his review of the "results of studies conducted during the last 70 years, testing whether the order of names on a ballot influenced election outcomes in America and abroad." (*Id.* at 3-4), (*id.* at 11) (explaining that by "concatenating" the results of a large number of elections in which name order was not varied, "a researcher can assess whether candidates listed early received more votes on average than did candidates listed later").

Days before Plaintiffs filed their Motion for Preliminary Injunction in this case, a federal district court in Florida issued a permanent injunction prohibiting the state of Florida from continuing to implement its nearly identical ballot order statute, finding it "systematically awards a material advantage to candidates affiliated with the political party of . . . [the] last-elected governor solely on the basis of their party affiliation," in violation of the First and Fourteenth Amendments. *Jacobson v. Lee*, 411 F. Supp. 3d 1249, 1275 (N.D. Fla. 2019), *vacated and remanded sub nom. Jacobson v. Florida Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020).  Citing the expert opinions of Dr. Rodden and Dr. Krosnick, the court found that the *Jacobson* plaintiffs had "proven the candidate listed first in their respective office block in Florida elections receives, *on average*, a five-percentage-point advantage over their competitors for that office by virtue of being the first-listed candidate." *Id.* (emphasis added).

3

Five months later, the Eleventh Circuit vacated the district court's judgment in *Jacobson*. *Jacobson v. Florida Sec'y of State*, 957 F.3d 1193, 1212 (11th Cir. 2020). In essence, the Eleventh Circuit found that the plaintiff's alleged injury of vote dilution was "legally insufficient to establish Article III standing." *Id.* at 1203. The Court held that "absent any evidence of vote dilution or nullification, a citizen is not injured by the simple fact that a candidate for whom she votes loses or stands to lose an election." *Id.* at 1202 (citing *Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009) and *Becker v. Fed. Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000)).

Drawing on a comparison to the Supreme Court's analysis of whether voters had standing to challenge a partisan gerrymander[2] based on the dilution of their votes in *Gill v. Whitford*, the Eleventh Circuit concluded that the evidence the plaintiff offered was insufficient to prove that the ballot statute will injure her by diluting her vote relative to the votes of Republicans. *Id.* at 1203 (discussing *Gill v. Whitford*, 138 S. Ct. 1916, 1929–31 (2018)). In *Gill*, the voters' theory of injury was that the partisan gerrymander caused their votes to "carry less weight" than they would "in another, hypothetical district" that had not been intentionally designed to discount their vote. 138 S. Ct. at 1931. The Supreme Court noted that instead of offering evidence that they lived in a gerrymandered district, which could have shown "disadvantage to themselves as individuals," *id.*

---

[2] Partisan gerrymandering operates by placing voters of one party "in legislative districts deliberately designed to 'waste' their votes in elections where their chosen candidates will win in landslides (packing) or are destined to lose by closer margins (cracking)." 138 S. Ct at 1930.

at 1930 (internal quotation marks omitted), the voters rested their case on a "theory of statewide injury to Wisconsin Democrats," *id.* at 1932. According to the Eleventh Circuit in *Jacobson,*

> To prove partisan vote dilution, the voters in *Gill* relied on an "average measure" of "partisan asymmetry" that compared the "statewide sum of one party's wasted votes" to "the statewide sum of the other party's wasted votes." The Supreme Court held that this average measure of the partisan effects of a gerrymander was insufficient to establish the voters' standing because it did not "address the effect that a gerrymander has on the votes of particular citizens." It instead "measure[d] something else entirely: the effect that a gerrymander has on the fortunes of political parties."

957 F.3d at 1203 (quoting *Gil*, 138 S. Ct. at 1932-33) (internal citations omitted).

In the Eleventh Circuit's view, the voters in *Jacobson* similarly relied on "a statewide average measure of the primacy effect in Florida elections to prove the injury of partisan vote dilution." *Id.* The experts testified that candidates who appear first on the ballot in Florida receive an average primacy effect vote of about five percent, but "acknowledged that this average measure tells us nothing about the existence or size of the primacy effect in any given election." *Id.* ("Dr. Krosnick agreed that his analysis did not "mean that every Republican candidate receive[s] a [five] percent advantage by being listed first." As he explained, the primacy effect will be larger in some races and smaller in others."). Because the plaintiffs relied "solely on an average measure of the primacy effect," the *Jacobson* reasoned that a court could not "know how often the primacy effect is zero and how often it is much greater than five percent," and that "[a]ny estimates [the court] might make about the variance in the primacy effect across

races would be pure speculation." *Id.* Consequently, the Eleventh Circuit ruled that the average measure of partisan advantage on which the plaintiff relied was insufficient to prove that her individual vote will be diluted:

> "We need not doubt [Jacobson's] math" to reach this conclusion. The reason her calculations cannot establish standing is that they "are an average measure." "They do not address the effect" that ballot order and the primacy effect have "on the votes of *particular* citizens" in any given election. Instead, like the average measures at issue in *Gill*, Jacobson's calculations "measure something else entirely: the effect that [ballot order and the primacy effect have] on the fortunes of political parties" across many elections. And complaints about that effect are based on nothing more than "generalized partisan preferences," which federal courts are "not responsible for vindicating."
>
> Much like the average measure of wasted votes in *Gill*, the average measure of the primacy effect treats all elections "as indistinguishable, even though their individual situations are quite different." In low-information races between Democrats and Republicans, the primacy effect may be quite pronounced. But in an especially competitive, high-information race, the primacy effect may be negligible or nonexistent. Likewise, some races in noncompetitive districts may have no Republican candidates on the ballot at all and, hence, no primacy effect. An average measure of the primacy effect across all elections cannot tell us whether ballot order has diluted or will dilute Jacobson's or any other citizen's vote in any particular election. *See id.* (explaining that statewide average measures of partisan advantage were incapable of distinguishing between the effects of a gerrymander on one citizen as opposed to another).
>
> Jacobson and the other voters failed to prove that they have suffered or will suffer partisan vote dilution in any particular election. As in *Gill*, this lawsuit presents a dispute "about group political interests, not individual legal rights." The "generalized partisan preferences" on which the voters rely cannot provide an injury in fact sufficient for Article III standing.

*Id.* at 1204 (quoting *Gill*, 138 S. Ct. at 1933) (internal citations omitted).

6

The Court appreciates the significance of the constitutional issues raised in this election case as well as the potential electoral reverberations of the challenged ballot party priority rule.  And the types of constitutional claims as to legally established competitive disadvantages raised by Plaintiffs have received more favorable treatment in some other courts.  *See, e.g.*, *Nelson v. Warner*, Civ. Act. No. 3:19-0898, 2020 WL 4004224, at *3 (S.D.W. Va. July 15, 2020) (distinguishing *Jacobson* and finding plaintiffs had standing to challenge constitutionality of ballot order statute because it will harm the electoral prospects of specific Democratic candidates running in the November general election); *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 539 (6th Cir. 2014) (holding that political party plaintiff had standing to bring challenge of the state's preferential ballot-ordering statute as impermissibly discriminating against minor political parties in violation of the First and Fourteenth Amendments because "the plaintiffs have participated in Tennessee's electoral politics in various ways, including by backing candidates listed as independents on the state's ballots" and "[t]hese independent candidates, it bears noting, were affected by the ballot-ordering statute"); *McLain v. Meier*, 637 F.2d 1159, 1166-67 (8th Cir. 1980) (invalidating statute that reserved the first position on the ballot for the party that received the most votes in the last congressional election because it "burden[ed] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment"); *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977) ("[T]he trial court's

conclusion that 'top placement on the ballot would be an advantage to the plaintiff' is supported by substantial evidence."); *Nat. Law. Party v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 44 (D.D.C. 2000) (collecting cases relative to grant of competitive advantage issue).

However, the Eleventh Circuit's decision in *Jacobson* legally binds this Court. As *Jacobson* found that Plaintiffs' alleged injury of vote dilution based on an average measure of partisan advantage is legally insufficient to establish standing to challenge the constitutionality of the ballot order statute, this Court cannot rule otherwise at this juncture, absent the Eleventh Circuit's modification of its ruling in *Jacobson*[3] or additional distinguishing or supplemental evidence having been alleged and introduced in the instant case. For this reason, the Court cannot find that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claims to support the imposition of extraordinary injunctive relief on the current record at this juncture.

Accordingly, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction [Doc. 22] without prejudice.[4] As Plaintiffs have indicated their request to amend the Complaint in the event the Court views the allegations as insufficient in any respect to establish standing,[5] the Court **DENIES** Defendants'

---

[3] The plaintiffs in *Jacobson* filed a petition for rehearing en banc in the Eleventh Circuit on May 20, 2020. The petition remains pending before the Court as of the date of this Order. The parties are additionally **DIRECTED** to file a notice on the docket notifying Court of the Eleventh Circuit's disposition of the petition.
[4] Plaintiffs may directly appeal this Order to the Eleventh Circuit. *See* 28 U.S.C. § 1292(a)(1) (providing that the courts of appeals shall have jurisdiction of appeals from interlocutory orders of the district courts refusing injunctions").
[5] Plaintiffs' Supplemental Brief (Doc. 57.)

Motion to Dismiss [Doc. 37] without prejudice and **GRANTS** Plaintiffs **LEAVE TO AMEND** their Complaint with allegations sufficient to establish the type of harm required by the Eleventh Circuit in *Jacobson*. To the extent Plaintiffs seek to renew their request for relief in advance of the November election based on supplemental evidence, the Court notes that timing is critical, especially given the timeline for ballot preparation and the Supreme Court's recent trend of orders forestalling any relief on the eve of an election. But the concerns raised by Plaintiffs here will persist beyond this election cycle, unless the panel's decision in *Jacobson* is the last word on this issue or alternately, there are no distinguishing factual circumstances in reality that separate this case from *Jacobson*.

**IT IS SO ORDERED** this 13th day of August, 2020.

_____
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**